**JONES & DYER**
**A Professional Corporation**
**1800 J Street**
**Sacramento, California 95811**
**Telephone: (916) 552-5959**
**Fax: (916) 442-5959**

**MARK A. JONES, State Bar #96494**
**KRISTEN K. PRESTON, State Bar #125455**

Attorneys for: Defendants County of Lake, Lake County Sheriff's Office, Matthew Wristen and Emil Devincenzi

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRAINERD | ) NO. C 07 2663 EDL |
| Plaintiff, | ) |
| | ) **NOTICE OF MOTION AND MOTION** |
| | ) **FOR SUMMARY JUDGMENT ON** |
| vs. | ) **BEHALF OF DEFENDANTS** |
| | ) |
| COUNTY OF LAKE; LAKE COUNTY | ) Date: July 22, 2008 |
| SHERIFF'S OFFICE; and DOES 1 through 50, | ) Time: 9:00 a.m. |
| inclusive, | ) Courtroom E, 15th Floor |
| | ) 450 Golden Gate Avenue |
| | ) San Francisco, CA |
| Defendants. | ) |
| | ) |
| _____ | ) |

1

# TABLE OF CONTENTS

2

3   NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   STATEMENT OF RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6   MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7   I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8          A.      Summary of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

9          B.      Plaintiff's Allegations Against Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . 2

10  II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

11         A.      The Living Arrangement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

12         B.      The Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

13         C.      The Arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

14         D.      The Detention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15                 1.      Booking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16                 2.      Probable Cause Determination . . . . . . . . . . . . . . . . . . . . . . . . . 5

17                 3.      Medical Attention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18                 4.      Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19  III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

20         A.      Standards of Summary Adjudication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21         B.      The Uncontested Facts Demonstrate There Was No Unreasonable Seizure of
                   Brainerd and Probable Cause Existed for His Arrest . . . . . . . . . . . . . . . . . . . . 7

22

23         C.      Qualified Immunity Extends to Shield Deputies Wristen and Devincenzi from
                   Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

24         D.      The Uncontested Facts Demonstrate That a Determination of Probable Cause Was
                   Timely Made . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

25

26         E.      The Uncontested Facts Demonstrate That Defendants Were Not Deliberately
                   Indifferent to Any Serious Medical Need of Brainerd . . . . . . . . . . . . . . . . . . . . 15

27         F.      The Uncontested Facts Demonstrate There Exists No Basis for Municipal
                   Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28

G.    The Uncontested Facts Demonstrate Neither Deputy Wristen Nor Devincenzi Are
Liable for the Allegations of Brainerd's Third and Fourth Causes of Action . . . . . 19

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

H:\MAJ.cases\Brainerd v. Lake County\Pleadings\MSJ\MSJ - Notice and P&A.wpd

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 106 S. Ct 2509 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Brinegar v. U.S.,
    338 U.S. 160, 69 S.Ct. 1302 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Caldarola v. Calabrese,
    298 F.3d 156 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Carnell v. Grimm,
    74 F.3d 977 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Celotex Corp. v. Catret,
    477 U.S. 317, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Chew v. Gates,
    27 F.3d 1432 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

City of Canton v. Harris,
    489 U.S. 377, 109 U.S. 1197 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

City of Oklahoma City v. Tuttle,
    471 U.S. 808, 105 S.Ct. 2427 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

City of St. Louis v. Praprotnik,
    485 U.S. 112, 108 S.Ct. 915 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Clement v. Gomez,
    298 F.3d 898 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

County of Riverside v. McLaughlin,
    500 U.S. 44, 111 S.Ct. 1661 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Estelle v. Gamble,
    429 U.S. 97, 97 S.Ct. 285 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Farmer v. Brennan,
    511 U.S. 825, 114 S.Ct. 1970 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fogel v. Grass Valley Police Department,
    415 F.Supp. 1084 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Franklin v. Oregon,
    662 F.2d 1337 (9th Cir 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gerstein v. Pugh,
    420 U.S. 103, 95 S.Ct. 854 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gibson v. County of Washoe,
    290 F.3d 1175 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Graham v. Conner,
    490 U.S. 386, 109 S.Ct. 1865 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Harlow v. Fitzgerald,
    457 U.S. 800,  102 S.Ct. 2727 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hutchinson v, United States,
    838 F.2d 390 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Illinois v. Gates,
    462 U.S. 213, 103 S.Ct. 2317 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Sylvester C.,
    137 Cal.App.4th 601, 40 Cal.Rptr.3d 461 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jackson v. City of Bremerton,
    268 F.3d 646 (9th Cir. 2001.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Jackson v. McIntosh,
    90 F.3d 330 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Jeffers v. Gomez,
    267 F.3d 895 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Jett v. Dallas Independent School District,
    491 U.S. 701, 109 S.Ct. 2702 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Levin v. United Airlines,
    158 Cal.App.4th 1002, 70 Cal.Rptr.3d 535 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lolli v. County of Orange,
    351 F.3d 410 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Los Angeles Protective League v. Gates,
    907 F.2d 879 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Malley v. Briggs,
    475 U.S. 335, 106 S.Ct. 1092 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Maryland v. Pringle,
    540 U.S. 366, 124 S.Ct. 795 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mitchell v. Forsyth,
    472 U.S. 511, 105 S.Ct. 2806 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Monell v. Dept. of Social Services,
    436 U.S. 658, 98 S.Ct. 2018 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Park v. Shiflett,
    250 F.3d 843 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pembauer v. City of a Cincinnati,
    475 U.S. 469, 106 S.Ct. 1292 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Peng v. Mei Chin Penghu,
    335 F.3d 970 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12

Romero v. Kitsap County,
    931 F.2d 624 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

Sanchez v. Vild,
    891 F.2d 240 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

Saucier v. Katz,
    533 U.S. 194, 121 S.Ct. 2151 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11, 12

Thompson v. City of Los Angeles,
    885 F.2d 1439 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

United States v. Bueno Vagus,
    383 F.3d 1104 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

United States v. Van Poyck,
    77 F.3d 285 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

Wilson v. Layne,
    526 U.S. 603, 119 S.Ct. 1692 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Wilson v. Seiter,
501 U.S. 294, 111 S.Ct. 2321 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

**STATUTES/OTHER:**

Fed. R. Civ. Pro. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

California Penal Code section 422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4, 8, 9

California Penal Code section 825 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

California Penal Code section 836(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

1

**NOTICE OF MOTION**

2    TO: ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE THAT on July 22, 2008, at the hour of 9:00 a.m. or as soon thereafter

4    as counsel may be heard, before the Hon. Elizabeth D. Laporte, in Courtroom E, 15th Floor, 450 Golden

5    Gate Avenue, San Francisco, California, defendants County of Lake, Lake County Sheriff's Office,

6    Matthew Wristen and Emil Devincenzi will move this Court for an order granting summary judgment

7    pursuant to Federal Rule of Civil Procedure 56, as against plaintiff Michael Brainerd.  This motion is

8    based on this notice, the Declarations of Kristen K. Preston ("Preston Declaration"), Crystal Esberg

9    ("Esberg Declaration"), Matthew Wristen ("Wristen Declaration"), and Emil Devincenzi ("Devincenzi

10   Declaration"), the memorandum of points and authorities in support thereof, the pleadings on file in this

11   action, and on such oral argument as the court may permit.

12

**STATEMENT OF RELIEF REQUESTED**

13          Defendants County of Lake, Lake County Sheriff's Office, Matthew Wristen and Emil

14   Devincenzi request an order granting summary judgment in their favor as against the claims of

15   plaintiff Michael Brainerd.

16

**ISSUES TO BE DECIDED**

17          Whether, as demonstrated by uncontested facts, liability against defendants, and each of

18   them, is precluded for the claims of Michael Brainerd for alleged violations of the Civil Rights Laws

19   of the United States, 42 U.S.C. 1983, including:

20          1.    unlawful arrest;

21          2.    unreasonable search and seizure;

22          3.    failure to provide timely probable cause hearing; and

23          4.    deliberate indifference to plaintiff's serious medical needs.

24

**MEMORANDUM OF POINTS AND AUTHORITIES**

25   **I.  INTRODUCTION**

26          **A.    Summary of the Case**

27          This 42 U.S.C. section 1983 action arises out of the May 19, 2005 arrest and detention of

28   Michael Brainerd by the Lake County Sheriff as the result of threats of bodily harm made by

1   Brainerd against his roommate.  Brainerd was detained at the Lake County Jail until May 23, 2005

2   when he was released.  During his detention, he was provided medical services for Type I diabetes.

3         Brainerd alleges there existed no probable cause for his arrest, that he was unreasonably

4   seized by Deputies Wristen and Devincenzi and detained at the Lake County Jail without a timely

5   probable cause determination.  Plaintiff further alleges that during the period of his detention,

6   defendants were deliberately indifferent to his serious medical needs.

7         Defendants deny these allegations and seek summary judgment on all claims.

8         **B.**     **Plaintiff's Allegations Against Defendants**

9         Plaintiff's complaint contains four specific causes of action alleged *against all defendants*,

10  including "Unlawful Arrest," "Unreasonable Search and Seizure," "Failure to Provide Timely

11  Probable Cause Hearing," and "Illegal Incarceration/Failure to Provide Medical Treatment."

12  Brainerd alleges wrongful conduct by the individual defendants and <u>Monell</u> claims as against Lake

13  County and the Sheriffs Department, contending that the wrongful conduct alleged was in

14  accordance with unspecified custom, policy and practice of Lake County.  Brainerd seeks recovery of

15  compensatory damages against all defendants and punitive damages against Deputies Wristen and

16  Devincenzi.

17  **II.**     **STATEMENT OF FACTS**

18        **A.**     **The Living Arrangement**

19        As of May 19, 2005, Michael Brainerd ("Brainerd") was residing at 5296 Blue Lakes Road in

20  Upper Lake, California, with roommates Marci Ward ("Ward") and Bobby Boyd ("Boyd").

21  (Brainerd Deposition 11:13-15.)   Brainerd, Ward and Boyd each possessed an ownership interest in

22  the residence.  (Brainerd Deposition 44:5-7; 45:24-26:17.)  Brainerd had known Boyd for

23  approximately 15 years.  (Brainerd Deposition 44:8-18.)  Brainerd had known Ward for 17-18 years.

24  (Brainerd Deposition 44:19-22.)   For 15 years Brainerd and Ward had lived together as a couple;

25  however, in approximately 2003, Ward broke off their intimate relationship.  Thereafter, they

26  continued in a platonic relationship as roommates.  (Brainerd Deposition 44:23-45:15.)

27        **B.**     **The Argument**

28        Ward and Boyd initiated discussions with Brainerd about purchasing his share of the

1  residence. (Brainerd Deposition 57:10-58:19.)  Brainerd "absolutely refused" Ward and Boyd's

2  suggestion that they buy him out of the house. (Id.)  Brainerd testified tension was building over the

3  preceding six months between the roommates. (Brainerd Deposition 49:6-10; 57:1-3.)

4      Brainerd came home from work on May 19, 2005 and a verbal altercation ensued between

5  the roommates concerning their joint ownership of the residence. (Brainerd Deposition 57:10-

6  64:17.)  Brainerd admits that the roommates had been involved in verbal altercations in the days

7  leading up to May 19, 2005. (Brainerd Deposition 52:21-54:14.)  Boyd's statements "upset"

8  Brainerd. (Brainerd Deposition 60:6-21.)  The two were yelling at one another with raised voices.

9  (Brainerd Deposition 61:11-17.)  The argument escalated and Ward, Boyd and Brainerd were all

10  three yelling at each other. (Brainerd Deposition 62:25-63:2.)

11      Brainerd claims that in the midst of the argument he left and went and sat in his room to

12  "cool off" with the door open.  He was sitting in his room when a Lake County Sheriff's Deputy

13  entered. (Brainerd Deposition 64:3-20.)

14      **C.**    **The Arrest**

15      At approximately 5:40 p.m. on May 19, 2005, Lake County Sheriff's Deputies Matthew

16  Wristen ("Wristen") and Emil Devincenzi ("Devincenzi") were dispatched on a call reporting a

17  verbal altercation between roommates at a residence located at 5269 Blue Lakes Road in Upper

18  Lake, California. (Wristen Declaration ¶3; Devincenzi Declaration ¶3.)  Upon their arrival at the

19  residence, Wristen and Devincenzi were told there were three residents of the home (Ward, Boyd

20  and Brainerd), each with an ownership interest.  Ward and Boyd, the complaining residents, reported

21  an argument pertaining to finances between the three roommates.  Ward and Boyd reported to the

22  deputies that were attempting to purchase from Brainerd his share in the residence.  Ward and Boyd

23  reported to the deputies that, in the course of the argument, Brainerd became angry and got in Boyd's

24  face.  Boyd and Ward reported that Brainerd raised his fist as if he was going to strike Boyd.  They

25  reported that Brainerd then walked away and stated that he intended to get a baseball bat and hit

26  Boyd in the head with it. (Wristen Declaration ¶4; Devincenzi Declaration ¶4.)

27      The deputies were given permission by Boyd and Ward to enter the residence where they

28  encountered Brainerd.  Upon questioning, Brainerd admitted to the officers that he made the threat

against Boyd but that he did not mean it.  Brainerd stated that he felt he was being "fucked with" by

Boyd and Ward.   Brainerd admitted that he had a baseball bat in his room.  The bat was actually

observed by the officers in Brainerd's room.  Wristen explained to Brainerd that a threat to hit

someone in the head with a baseball bat is a crime.  Brainerd responded to Wristen that Brainerd was

not going to be "fucked with" and that he would do what he had to do.  (Wristen Declaration ¶5;

Devincenzi Declaration ¶5.)

Throughout the time the deputies were at the residence, Boyd and Ward demonstrated in their

statements and in their conduct, that they were genuinely fearful of Brainerd.  Boyd was crying and

stated that he was sincerely frightened as a result of Brainerd's threat to strike him with a baseball

bat.  (Wristen Declaration ¶6; Devincenzi Declaration ¶6.)  Brainerd confirmed in testimony that

Ward was fearful and crying and that Boyd was also crying.  (Brainerd Deposition 75:12-22.)

Based on the circumstances presented to the deputies, Wristen and Devincenzi believed that

Brainerd threatened to physically harm Boyd with a baseball bat.  They observed that the baseball bat

was readily accessible to Brainerd.  Boyd and Ward appeared genuinely fearful.  Despite warnings of

the implications of his threats, Brainerd nonetheless indicated he would "do what he had to do."  On

the basis of these observations, the deputies determined Brainerd was in violation of California Penal

Code section 422 - Terrorist Threats.  (Wristen Declaration ¶7.)[1]   Wristen placed Brainerd under

arrest and advised him of the crime for which he was being arrested.  (Wristen Declaration ¶7;

Devincenzi Declaration ¶7.)

At the time Brainerd was placed under arrest, Wristen noted the odor of alcohol coming from

him.  Wristen asked Brainerd if he had been drinking.  Brainerd admitted to Wristen that he had

consumed a couple of beers after work.  (Wristen Declaration ¶8.)

Wristen transported Brainerd to the Hill Road Correctional Facility where Brainerd was

---

[1] California Penal Code section 422 provides in pertinent part:"Any person who willfully threatens to commit a crime which will result in death or great bodily harm to another person, with the specific intent that the statement, made verbally . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person to reasonably be in sustained fear for his or her own safety . . . shall be punished by imprisonment . . ."

1   booked on the charge of violating California Penal Code section 422.  Brainerd reported to Wristen

2   at the correctional facility that Brainerd was sorry he had made the threat and that he would never

3   hurt anybody.  (Wristen Declaration ¶9; Devincenzi Declaration ¶8)

4        Pursuant to Sheriff's Department procedures, Wristen prepared a narrative report regarding

5   the dispatch and the arrest.(Wristen Declaration ¶10, Exhibit A to Declaration; Esberg Declaration

6   ¶¶4 and 7, Exhibit A to Declaration.)

7        **D.**    **The Detention**

8            **1.**    **Booking**

9        Pursuant to Lake County Sheriff's Department procedures, booking officers are required at

10  the time of booking to prepare a Booking Form, a Pre-Booking Health Form, and Intake

11  Questionnaire completed with input from the individual arrested.  In Brainerd's case, each of these

12  forms was completed.  (Esberg Declaration ¶¶ 6 and 7, Exhibits A and B to Declaration.)  Lake

13  County Jail personnel are specifically trained to summon medical care for inmate medical conditions

14  of which they become aware.  Once medical care is summoned for an inmate, medical personnel are

15  responsible for administering medical care to the inmate.  (Esberg Declaration ¶¶ 6, 7, and 8, Exhibit

16  B to Declaration.)

17           **2.**    **Probable Cause Determination**

18       Pursuant to Department procedures, on May 19, 2005 Wristen prepared a Declaration for

19  Probable Cause and Bail Setting, setting forth under penalty of perjury information pertinent to the

20  dispatch and the arrest of Brainerd.  Pursuant to Department procedures, the Declaration was

21  submitted to a magistrate for determination of probable cause.  (Wristen Declaration ¶11, Exhibit B

22  to Declaration; Esberg Declaration ¶7, Exhibit A to Declaration.)

23       On May 21, 2005, the Hill Road Jail Facility was notified of an order issued by Lake County

24  Magistrate Halstrom that there was sufficient probable cause to detain Mr. Brainerd for a felony

25  violation of California Penal Code section 422.  (Esberg Declaration ¶11, Exhibit A to Declaration.)

26           **3.**    **Medical Attention**

27       Medical services at the jail are provided pursuant to contract by California Forensic Medical

28  Group ("CFMG").  (Esberg Declaration ¶9.)

1    Wristen is uniquely familiar with diabetes as the result of his experience with family

2    members who suffer from this disease. (Wristen Declaration ¶12.)   At the time of the arrest and

3    until Brainerd was left in the booking area of the Lake County detention facility, Wristen did not

4    observe any signs of diabetic distress from Brainerd. (Wristen Declaration ¶13.)  At no time while

5    he was in the presence of Wristen and/or Devincenzi, did Brainerd exhibit or express the need for

6    medical evaluation or treatment for any condition. (Wristen Declaration ¶14; Devincenzi

7    Declaration ¶10.)

8        At the time Brainerd was booked, the Pre-Booking Medical Information Report and Intake

9    Questionnaire were completed reflecting that Brainerd is a Type I diabetic. (Esberg Declaration ¶8.)

10   Information concerning Brainerd's medication was also obtained from him. (Id.)

11       On the basis of the information obtained from him, Brainerd was immediately referred to

12   CFMG medical personnel for monitoring and management of his medical conditions. (Esberg

13   Declaration ¶8, Exhibit C to Declaration.)  Documentation of Brainerd's medical treatment reflects

14   his first contact with medical personnel was at approximately 6:33 p.m. May 19, 2005 when his

15   blood sugar was first tested.  In accordance with the contract to provide detainees medical services,

16   all medical treatment administered to Brainerd, including medications, was provided by medical

17   personnel from CFMG, not Lake County jail personnel. (Esberg Declaration ¶9, Exhibit C to

18   Declaration.)

19       **4.    <u>Release</u>**

20       On May 23, 2005, the Hill Road Jail Facility received notification from the Office of the

21   Lake County District Attorney that charges for Brainerd's violation of Penal Code 422 would not be

22   pursued and that Brainerd was to be released pursuant to the provisions of Penal Code section 825.

23   In accordance with this notification, Brainerd was released from the Hill Road Jail Facility on May

24   23, 2005 and was provided a "Detention Certificate" at the time of his release.  (Esberg Declaration

25   ¶11, Exhibit D to Declaration.)  Brainerd's release was delayed for a short period of time because jail

26   personnel were notified that a temporary restraining order was issued against Brainerd and would be

27   ///

28   ///

1    transmitted to the jail for service on Brainerd before his release.[2]  The Order was ultimately received,

2    served on Brainerd, and Brainerd was then released from custody in the morning on May 23, 2005.

3    (Esberg Declaration ¶13.)

4    **III.    ARGUMENT**

5         **A.    Standards of Summary Adjudication**

6         A defendant may obtain summary judgment when "there is no genuine issue as to any

7    material fact . . ."  (Fed. R. Civ. Pro. 56(c).)   In deciding whether a genuine issue of material fact

8    exists, the court's inquiry "must be guided by the substantive evidentiary standards that apply to the

9    case."  (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2509 (1986).)  In turn, those

10   standards are to be applied to "only disputes over facts that might affect the outcome of the suit

11   under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted."

12   Id., at 248.

13        "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate

14   time for discovery and upon motion, against a party who fails to make a showing sufficient to

15   establish the existence of an element essential to that party's case, and on which that party will bear

16   the burden of proof at trial."  (Celotex Corp. v. Catret, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).)

17   Where a sufficient showing is not made, the moving party is entitled to judgment as a matter of law.

18   (Id., at 323.)

19
20        **B.    The Uncontested Facts Demonstrate There Was No Unreasonable Seizure of
                  Brainerd and Probable Cause Existed for His Arrest**

21        Brainerd's first and second claims are properly considered in tandem.  "Unlawful arrest"

22   claims are more precisely framed as whether a 'seizure' for purposes of the Fourth Amendment

23   occurred.  In this instance, Brainerd alleges no 'seizure' separate from his arrest.

24        The deputies in this case were authorized to make a warrantless arrest of Brainerd where

25   probable cause existed for his arrest.  (California Penal Code section 836(a)(2).)  To comply with the

26   _____

27        [2]  Court records of which defendants request judicial notice be taken  reflect that Ms. Ward sought a
     temporary restraining order for the protection of herself and Mr. Boyd on May 19, 2005 - the same day Brainerd
28   was arrested.  In her petition, Ms. Ward complained under penalty of perjury that Brainerd was verbally abusing
     her and Mr. Boyd for the preceding 6 months and that the abusive behavior was escalating.

1   Fourth Amendment, the arrest must be supported by probable cause to believe the arrestee has

2   committed a crime.  (Caldarola v. Calabrese, 298 F.3d 156, 161 (2nd Cir. 2002).)  Probable cause is

3   defined in terms of facts and circumstances sufficient to warrant a prudent person in believing that

4   the suspect had committed or was committing an offense.  Officers have probable cause to make an

5   arrest when, "the facts and circumstances within their knowledge, and of which they had reasonably

6   trustworthy information, were sufficient in themselves to warrant a man of reasonable caution in the

7   belief" that an offense has been or is being committed.  (Brinegar v. U.S., 338 U.S. 160, 176, 69

8   S.Ct. 1302 (1949).)  This subjective standard for determination of the belief that a felony is being or

9   has been committed is based on a totality of the circumstances.  (Park v. Shiflett, 250 F.3d 843, 850

10  (4th Cir. 2001).)  "[P]robable cause is a fluid concept - turning on the assessment of probabilities in a

11  particular factual contexts . . ."  (Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317 (1983).)

12  Probable cause is not capable of precise definition, rather turns on a *reasonable belief* of guilt

13  regarding the particular person subject to arrest.  (Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct.

14  795 (2003).)  Probable cause is determined by an objective, rather than subjective, standard.

15          Officers Wristen and Devincenzi had probable cause to arrest Brainerd because "the facts and

16  circumstances within their knowledge, and of which they had reasonably trustworthy information

17  [are] sufficient in themselves to warrant a man of reasonable caution in the belief that a [violation of

18  California Penal Code section] was being or had been committed."  (Brinegar, supra, at page 176.)

19          The elements of making a criminal threat pursuant to Penal Code section 422 are: (1) a

20  willful threat to commit a crime that will result in death or great bodily injury to another person; (2)

21  the threat is made with the specific intent that the statement is to be taken as a threat, regardless of

22  whether there is intent to carry it out; (3) the threat is, on its face and under the circumstances in

23  which it is made, so unequivocal, unconditional, immediate and specific as to convey to the person

24  threatened, the seriousness and immediate possibility that the threat will be acted upon; (4) that

25  actually causes the person threatened to be in sustained fear for his own safety or the safety of his

26  immediate family; and (5) that the fear exhibited was reasonable under the circumstances.  (In re

27  Sylvester C., 137 Cal.App.4th 601, 605, 40 Cal.Rptr.3d 461 (2006).)  However, the defendants are

28  not required to show that the facts known to Wristen and Devincenzi were sufficient to actually

1  prove Brainerd's guilt for violation of Penal Code section 422. Rather, defendants are required to

2  establish that the officers were aware of facts that would cause a *reasonable person* to suspect a

3  crime had been committed. (Levin v. United Airlines, 158 Cal.App.4th 1002, 70 Cal.Rptr.3d 535

4  (2008).)

5       In this case, the officers were presented with the statements of Brainerd's housemates, who

6  claimed Brainerd was threatening to do physical harm to Boyd, namely, strike Boyd in the head with

7  a baseball bat. Brainerd had the means available to carry out his threat. Brainerd's victim Boyd was

8  fearful of his safety and was convinced that Brainerd would execute his threat. Ward expressed a

9  similar belief to the officers that Brainerd's threat was serious. While claiming to the deputies that

10 he "didn't mean it," Brainerd nevertheless confirmed that the bat was readily available to him and

11 that he would "do what he had to do." The evidence demonstrates a reasonable belief on the part of

12 the deputies that a reasonable person would take Brainerd's threat seriously. (Fogel v. Grass Valley

13 Police Department, 415 F.Supp. 1084, 1089 (E.D. Cal. 2006).) The deputies were presented with

14 ample basis upon which to conclude that Brainerd committed a violation of Penal Code section 422.

15      It is anticipated that Brainerd will deny making any threats, deny his access to the baseball

16 bat and that he will claim that Ward and Boyd "conspired" against him and fabricated their claims.

17 That Brainerd's recall of the incident leading to his arrest is entirely opposite of every other person

18 on scene speaks for itself; nevertheless, Brainerd's account is entirely irrelevant to this court's

19 determination that probable cause existed for his arrest. The court's opinion in Peng v. Mei Chin

20 Penghu, 335 F.3d 970 (9th Cir. 2003) (*cert. denied*, 540 U.S. 1218, 124 S.Ct. 1506 (2004)), is

21 particularly instructive. In Peng, the court addressed the issue of probable cause in a domestic

22 disturbance setting similar to that presented here. Peng was arrested for robbery by Sheriff's Deputy

23 Gage based on allegations that Peng forcibly took certain documents from his sister. Peng was taken

24 into custody, and thereafter was released when the District Attorney's office determined that there

25 was insufficient evidence to press charges. Peng filed a civil rights suit against Deputy Gage, Peng's

26 sister and her son. Peng alleged that his sister and her son made false statements to Gage that caused

27 his arrest.

28      The Ninth Circuit upheld the District Court's granting of summary judgment in favor of

1  Deputy Gage on the basis that probable cause existed for the arrest and that Deputy Gage was in any

2  event immune from suit based upon qualified immunity.  The court in <u>Peng</u> reiterated that police

3  officers responding to a domestic violence report have a duty to ensure the present and continued

4  safety and well being of the occupants of the residence where the alleged violence took place.  The

5  court further noted that where a victim alleges that force, or a threat of force, exists, it is "important

6  for officers to err on the side of safety for the victim in order to prevent further violence and allow

7  the parties to cool down." (<u>Peng</u>, <u>supra</u>, at 978, fn.6.)  Significantly, the court concluded that the

8  presence of  "a factual dispute regarding a victim's complaint at the scene of an alleged domestic

9  disturbance does not defeat probable cause if: (1) the victim's statements are sufficiently definite to

10  establish that a crime has been committed; and (2) the victim's complaint is corroborated by either

11  the surrounding circumstances or other witnesses."  (<u>Peng</u>, <u>supra</u>, at 979.)

12      In the instant case, Boyd's statement that his roommate, Brainerd, had made a specific threat

13  to hit him in the head with a baseball bat, particularly given the circumstances of the heated

14  arguments, are indisputably sufficiently definite to establish the threat of violence proscribed by

15  Penal Code section 422.  Boyd's complaint was corroborated by Marcie Ward in statements to the

16  arresting officers.  Indeed, according to the arresting officers, Brainerd repeated his threat and

17  admitted his ability to obtain the bat.  Undoubtedly, for these reasons the magistrate, within 48 hours

18  of the arrest, determined that probable cause existed to hold Brainerd for the alleged crime.

19      The officers' arrest was based on the statements of Brainerd's victims as well as the officers'

20  own observations and interaction with Brainerd.  The victims statements to the officers were

21  definite: Brainerd threatened to physically harm his house-mate Bobby Boyd with a baseball bat.

22  Bobby Boyd and Marci Ward stated and demonstrated their fear that Brainerd would follow through

23  with his threats.

24  **C.     Qualified Immunity Extends to Shield Deputies Wristen and Devincenzi from
25          Liability**

26      Qualified immunity protects "government officials . . . from liability for civil damages

27  insofar as their conduct does not violate any clearly established statutory or constitutional rights of

28  which a reasonable person would have known."  (<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 , 102

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07 2663 EDL**

-10-

1  S.Ct. 2727 (1982).)  The rule of qualified immunity "provides ample protection for all but the plainly

2  incompetent or those who knowingly violate the law;" defendants can have a reasonable – albeit

3  mistaken – belief about the facts or about what the law requires in any given circumstance.  (Saucier

4  v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001), (quoting Malley v. Briggs, 475 U.S. 335, 341,

5  106 S.Ct. 1092 (1985).)  "Therefore, regardless of whether the constitutional violation occurred, the

6  [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the

7  [official] could have reasonably believed that his particular conduct was lawful."  (Romero v. Kitsap

8  County, 931 F.2d 624, 627 (9th Cir. 1991).)  "[T]he entitlement is an immunity from suit rather than

9  a mere defense to liability; . . .  It is effectively lost if a case is erroneously permitted to go to trial."

10  (Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).)

11       In considering a claim of qualified immunity, a court must first determine whether the

12  plaintiff has alleged the deprivation of an actual constitutional right.  "[T]he required first stop in the

13  qualified immunity analysis is to consider the materials submitted in support of, and in opposition to,

14  summary judgment, in order to decide whether a constitutional right would be violated if all the facts

15  are viewed in favor of the party opposing summary judgment."  (Jeffers v. Gomez, 267 F.3d 895,

16  909 (9th Cir. 2001).)  Then the court must determine whether that right was clearly established.

17  (Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692 (1999).)  According to Saucier, the question the

18  court must determine in this motion is, taken in the light most favorable to Brainerd, do the facts

19  alleged show the deputies' conduct violated a constitutional right?  Saucier, supra, at page 201.  If no

20  constitutional right would have been violated were the allegations established, there is no necessity

21  for further inquiries concerning qualified immunity.  (Id.; see also Jackson v. City of Bremerton, 268

22  F.3d 646, 651 (9th Cir. 2001.)

23       In this case, the uncontested facts demonstrate the absence of any violation of Brainerd's

24  Fourth Amendment rights.  Even assuming the absence of probable cause, the deputies are

25  nevertheless immune from liability for Brainerd's claims.  If a constitutional violation can be made

26  out on the opposing party's submissions, "the second inquiry is whether the officer could

27  nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly

28  established constitutional right."  (Jackson, supra at page 651.; see also Jeffers, supra, at page 909.)

1  With respect to this second inquiry, the Supreme Court has "emphasized the broad discretion that

2  must be afforded to police officers who face tense situations, and the importance of granting

3  immunity even when the officers make mistakes." (Jeffers, supra, at page 909; Saucier, supra, at

4  page 205.)

5       The Superior Court's determination that probable cause existed to hold Brainerd precludes

6  any argument that arrest was made without probable cause.  Even if a probable cause had not been

7  made, such as was the case in Peng, supra, the arresting officers would clearly be immune from suit

8  based upon qualified immunity.  It would not have been clear to reasonable officers in the position of

9  Wristen and Devincenzi that probable cause did not exist for the arrest.  In this inquiry, the central

10 issue is whether the deputies' actions were objectively reasonable in view of "the facts and

11 circumstances confronting them, without regard to their underlying intent or motivation." (Graham

12 v. Conner, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989).  Any factual disputes Brainerd may attempt to

13 raise pertaining to the circumstances at the time of his arrest – including whether he ever actually

14 threatened to strike Boyd in the head with a bat, the availability of the bat to Brainerd, or any lack of

15 intent to carry out a threat once made – are inappropriate for consideration on the issue of qualified

16 immunity.  The analysis is of the facts and circumstances as perceived from the deputies' point of

17 view and an assessment of the reasonable objectivity of those circumstances.  (Saucier, at page 205.)

18      The deputies both observed the demeanor of Brainerd's roommates and their statements

19 regarding the threat made by Brainerd.  Both deputies observed the baseball bat in Brainerd's room.

20 Both deputies heard Brainerd reiterate his threat, stating he would not be "fucked with" and that he

21 would "do what he had to do."  The hostile environment with the threat of domestic violence made

22 by Brainerd was sufficient basis upon which the deputies determined probable cause existed for his

23 arrest.  As the court concluded in Peng, supra, even if the officer had been mistaken about the

24 existence of probable cause, his mistake was objectively reasonable, and he was entitled to qualified

25 immunity.  (Peng, supra, at page 980.)

26      Defendants Wristen and Brainerd are entitled, as a matter of law, to judgment on the basis of

27 qualified immunity.

28 ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.    The Uncontested Facts Demonstrate That a Determination of Probable Cause Was Timely Made**

A person held in custody must receive a fair and reliable determination of probable cause by a judicial officer and this must be done promptly.  (<u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 111 S.Ct. 1661 (1991).)  The determination must be made as soon as reasonably feasible, but in no case more than 48 hours after the arrest.[3]    The Supreme Court has held that, where a jurisdiction has established probable cause within forty-eight hours of arrest, that jurisdiction is immune from systemic challenges.  (<u>McLaughlin</u>, at page 56.)

The Ninth Circuit specifically addressed the application of the time limitations prescribed by <u>McLaughlin</u>, in a case factually similar to that presented here by Brainerd.  In <u>United States v. Bueno Vagus</u>, 383 F.3d 1104 (9th Cir. 2004) (*cert. denied* 543 U.S. 429, 125 S.Ct. 1098 (2004)) the court held:

> If the government wishes to detain an arrested suspect pending further proceedings (rather than let the suspect go in the meantime), the Fourth Amendment adds an additional requirement to the government's tasks.  In <u>Gerstein v. Pugh</u>, 420 U.S. 103, 114, 95 S.Ct. 854 (1975) the Supreme Court held that 'the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."  When an arrest has been made subject to a warrant, a judicial determination of determination of probable cause has already been made as a prerequisite to obtaining the arrest warrant.  In the case of warrantless arrests, however, there has been no pre-arrest probable cause determination by a judicial officer.  In such cases, the Court has held that to detain the suspect pending further proceedings, the government must obtain – within 48 hours of the arrest – a probable cause determination by a judicial officer.  (<u>McLaughlin</u>, citation omitted.) [Fn 5. A delay of more than 48 hours is justified only by demonstration of 'the existence of a bona fine emergency or other extraordinary circumstance.' <u>McLaughlin</u>, 500 U.S., at 57 111 S.Ct. 1661.]

Thus, even a delay beyond 48 hours may not constitute a Fourth Amendment violation where

---

[3] California Penal Code section 825(a) similarly requires, " (a) (1) Except as provided in paragraph (2), the defendant shall in all cases be taken before the magistrate without unnecessary delay, and, in any event, within 48 hours after his or her arrest, excluding Sundays and holidays.  (2) When the 48 hours prescribed by paragraph (1) expire at a time when the court in which the magistrate is sitting is not in session, that time shall be extended to include the duration of the next court session on the judicial day immediately following. If the 48-hour period expires at a time when the court in which the magistrate is sitting is in session, the arraignment may take place at any time during that session. However, when the defendant's arrest occurs on a Wednesday after the conclusion of the day's court session, and if the Wednesday is not a court holiday, the defendant shall be taken before the magistrate not later than the following Friday, if the Friday is not a court holiday." California Penal Code section 849(a) requires, "When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate."

1  sufficient justification for the delay is demonstrated.  (Id.)  A delay in determining probable cause

2  that lasts less than 48 hours can raise constitutional concerns only if the individual arrested can prove

3  *unreasonable delay*.  (McLaughlin, supra.)  Examples offered by the Supreme Court include delays

4  motivated by ill will against the arrested individual, such as delay for the purpose of gathering

5  additional evidence to justify the arrest.  Id., at page 57.

6      The probable cause determination here complies with the procedural requirements imposed

7  by McLaughlin.  Distinguishing the time and procedural limitations imposed on determination of

8  probable cause with arraignment proceedings, the Ninth Circuit in United States v. Van Poyck, 77

9  F.3d 285 (9th Cir. 1996) (*cert. denied* 519 U.S. 912, 117 S.Ct. 276 (1996)) noted:

10      This [unavailability of a magistrate for arraignment] distinguishes this situation from
        the determination of probable cause which must be made within 48 hours . . . of a
11      warrantless arrest in [McLaughlin].  **Such probable cause determinations can be
        made solely on the basis of written affidavits and do not require the services of**
12      **any personnel beyond the judicial officer**.  (Van Poyck, supra, at footnote 6.
        Emphasis added.)

13

14      In this case, the arresting officer prepared and presented a declaration for determination of

15  probable cause the night Brainerd was booked into the Lake County Jail.  Within 48 hours of this

16  declaration, a judicial officer determined probable cause existed for the arrest and communicated this

17  determination to the Lake County Jail.  There was no delay, reasonable or otherwise, in obtaining

18  this determination.

19      Brainerd's arrest was reviewed by the Lake County District Attorney.  Ultimately, on

20  Monday, May 23, 2005, the Lake County Jail received notification that the District Attorney

21  determined not to pursue formal charges against Brainerd; rather, the District Attorney determined

22  that the interests of justice were served by Brainerd's arrest.  Therefore, Brainerd was not arraigned

23  prior to his release from detention.  Following notification from the District Attorney, Brainerd was

24  released within a reasonable time, at approximately 10:30 a.m. May 23, 2005.

25      The probable cause determination occurred well within the requisite time limitations and

26  defendants are entitled to summary judgment on this claim.

27  ///

28  ///

1

2

  **E.**  **The Uncontested Facts Demonstrate That Defendants Were Not Deliberately Indifferent to Any Serious Medical Need of Brainerd**

3    The right of a pretrial detainee to receive adequate medical care while in custody derives

4 from the due process clause of the Fourteenth Amendment rather than the Eighth Amendment

5 protections against cruel and unusual punishment. (Gibson v. County of Washoe, 290 F.3d 1175,

6 1187 (9th Cir. 2002).) "The due process clause imposes, at a minimum, the duty the Eighth

7 Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain

8 deliberately indifferent to their serious medical needs'." (Id., quoting Carnell v. Grimm, 74 F.3d 977,

9 979 (9th Cir. 1996).) Therefore, while the claims of pretrial detainees derive from the Fourteenth

10 Amendment due process clause, the Eighth Amendment "serves as the benchmark for evaluating

11 these claims." (Carnell, supra, at page 877.) "A defendant is liable for denying medical care only if

12 he 'knows of and disregards an excessive risk to inmate health and safety'." (Lolli v. County of

13 Orange, 351 F.3d 410, 418 (9th Cir. 2003) quoting Gibson, supra, at page 1187.) Brainerd has the

14 burden to establish that he was (1) "confined under conditions posing a risk of objectively,

15 sufficiently serious harm," and (2) "that the officials had a sufficiently culpable state of mind in

16 denying the proper medical care." (Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).) Thus, the

17 claim requires Brainerd to establish the objective component of serious medical need[4] and the

18 subjective component, to "show that the officials had a culpable state of mind which is 'deliberate

19 indifference' to a substantial risk of serious harm." (Id.)

20    Mere negligence does not suffice to establish a constitutional violation. "Thus, a complaint

21 that a physician has been negligent in diagnosing or treating a medical condition does not state a

22 valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

23 become a constitutional violation merely because the victim is [in custody]." (Estelle v. Gamble,

24 429 U.S. 97, 106, 97 S.Ct. 285 (1976).)

25    "[A] person is liable for denying a prisoner needed medical care only if the person 'knows of

26 and disregards an extensive risk to inmate health and safety'. (Citation omitted.) In order to know of

27

28    [4] It is not disputed for purposes of this motion that plaintiff's diabetic condition is of the nature of a "serious medical need."

the excessive risk, it is not enough that the person merely 'be aware of facts from which the inference would be drawn that a substantial risk off serious harm exists, [  ] he must also draw that inference.' (Citation omitted)." (Gibson, supra, at pages 1187-1188.)

To impose liability on an individual, plaintiff bears the burden to make an affirmative showing that defendant knew that Brainerd faced a substantial risk of serious harm and that defendants disregarded that risk by failing to take reasonable steps to abate it. (Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994).) This may be satisfied by showing (1) a purposeful act or failure to respond to a possible medical need and (2) harm caused as a result of the indifference. The Farmer court characterized the "state of mind" must be "more blameworthy than negligence." (Id., at 835.) The inquiry for this substantive component of "deliberate indifference" requires an assessment of the prison officials' state of mind. (Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321 (1991).) The Farmer court expressed the standard for assessment:

> We reject prisoner's invitation to adopt and objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn . . . and he must also draw the inference.

In order for liability for deliberate indifference to attach to a municipality, the plaintiff must produce evidence demonstrating constructive notice that it needs to "remedy its omissions in order to avoid violations of constitutional rights". (Gibson, supra, 290 F.3d at page 1187, fn. 8, citing Farmer, supra, 511 U.S. at page 841 and City of Canton v. Harris, 489 U.S. 378, 388, n. 8, 109 U.S. 1197 (1989).)

Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care". (Hutchinson v, United States, 838 F.2d 390, 392 (9th Cir. 1988).) However, "[m]ere differences of opinion between a prisoner and the prison medical staff do not and cannot support a claim for "deliberate indifference." (Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) *cert denied* 519 U.S. 1029, 117 S.Ct. 584 (1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).)

Brainerd bases his claim of "deliberate indifference" on the allegation that defendants, being

1   informed of plaintiff's medical condition, failed to respond.[5]   The uncontested facts demonstrate just

2   the opposite is true.  Defendants took the initiative in the booking process to ascertain the state of

3   Brainerd's health and immediately summoned medical services to evaluate, monitor and treat his

4   diabetic condition throughout the period of his detention.

5         The claims against the defendants County of Lake and Lake County Sheriff's Department are

6   without merit.  Medical services for the jail facility are provided by independent contractor CFMG.

7   Upon discovery of Brainerd's diabetic condition, defendants summoned CFMG and advised CFMG

8   of his condition.  Thereafter, CFMG provided monitoring and treatment for Brainerd.  No facts exist

9   upon which Brainerd can demonstrate the requisite culpable state of mind against these defendants.

10        Defendants were informed by Brainerd at the time of his booking that he had Type I diabetes.

11  Defendants further obtained from Brainerd a list of the prescription medications Brainerd was

12  required to take.  This information was obtained by the booking officers in compliance with the

13  booking policies and procedures in effect as of May 19, 2005.  Pursuant to these policies and

14  procedures, the CFMG medical staff was notified of this information at approximately 6:28 p.m. on

15  May 19, 2005 - or within the hour after plaintiff was brought into the Lake County Jail after his

16  arrest.

17        Brainerd, pursuant to jail policy, could not self administer medications.  Even if he was

18  allowed to bring drugs with him to the jail, the drugs would be confiscated and locked up in the

19  property area, and inaccessible to Brainerd.  Defendants County of Lake and Lake County Sheriff's

20  Department may only be held liable for deliberate indifference when plaintiff demonstrates that these

21  defendants knowingly failed to respond to plaintiff's requests for help.  (Estelle v. Gamble, 429 U.S.

22  97, 104, 97 S.Ct. 285 (1976).)  The uncontested facts demonstrate that defendants themselves did not

23  withhold medical treatment from the plaintiff, neither withheld nor administered medications to the

24

25        [5]  Plaintiff alleges in his complaint: "During [the period of plaintiff's detention] plaintiff began
26  experiencing diabetic seizures as a result of the uncontrolled diabetes, including medical complications and
    symptoms resulting in significant harm to plaintiff's health and safety.  Plaintiff's conditions became so pervasive
27  and apparent that another inmate who was familiar with diabetic symptoms provided plaintiff with two pieces
    of small candy to control plaintiff's condition.  Plaintiff and others informed defendants and their detention
28  medical staff that plaintiff needed emergency medical intervention, but defendants failed to take any reasonable
    measures to treat plaintiff's medical condition."  Complaint at paragraph 17.

1  plaintiff, promptly notified the contracted medical services provided, and did not interfere with

2  contracted medical services.  CFMG immediately evaluated Brainerd's condition, monitored his

3  blood sugar levels at regular intervals throughout his detention, obtained medication records from

4  Brainerd's healthcare providers and administered medications.

5
6  **F.      The Uncontested Facts Demonstrate There Exists No Basis for Municipal Liability**

7      Brainerd alleges municipal liability as to each cause of action; however, Brainerd fails to

8  identify any specific basis upon which he claims municipal liability as to any cause of action.[6]

9      "A municipality may nor be sued under Section 1983 solely because an injury was inflicted

10  by its employees or agents . . . Instead it is only when execution of a government's policy or custom

11  inflicts the injury that the municipality as an entity is responsible."  (Monell v. Dept. of Social

12  Services, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978).)  Counties are not liable for deprivations caused

13  by their employees.  (Id.)  Counties are subject to liability where "action pursuant to official

14  municipal policy of some nature cause[s] a constitutional tort."  (Id.)  Liability of the municipality

15  must rest on its own actions.

16      Such "official . . . policy" may be established by either of two methods.  One method is to

17  demonstrate that the violation "was caused by an existing, unconstitutional municipal policy, which

18  policy can be attributed to a municipal policy maker."  (City of Oklahoma City v. Tuttle, 471 U.S.

19  808, 823-824, 105 S.Ct. 2427 (1985).)  The practice must consist of more than "random acts or

20  isolated events" and must instead be the result of "permanent well settled practice."  (Thompson v.

21  City of Los Angeles, 885 F.2d 1439, 1443-1444 (9th Cir. 1988).)  The second method is to

22  demonstrate that the violation, if random or isolated, was undertaken or ratified by "the city

23  employee who had the final decision making authority on the issue in question."  (Los Angeles

24  Protective League v. Gates, 907 F.2d 879, 889 (9th Cir. 1990), citing City of St. Louis v. Praprotnik,

25  485 U.S. 112, 108 S.Ct. 915 (1988).) Absent the intervention of a final policy maker, a single

26  _____

27      [6] Brainerd alleges only that Wristen and Devincenzi were involved in his arrest.  Brainerd identifies no
   other individual defendants, including employees, agents, or final policy makers he claims participated in the
28  wrongful conduct he alleges.  Allegations as against the County of Lake and the Lake County Sheriff's Office
   are redundant and are considered jointly here.

1  incident of unconstitutional action is insufficient to support municipal liability.  Brainerd's

2  complaint does not distinguish which method he intends to pursue in this action.

3        Brainerd must demonstrate not only the existence of a policy, but causation.  Only where a

4  municipal policy is deemed the "moving force" behind the violation is a sufficient causal

5  relationship established.  (Chew v. Gates, 27 F.3d 1432, 1444 (1994), citing Monell, supra, at page

6  690-691.)  Plaintiff bears the burden of demonstrating a ***direct causal link*** between departmental

7  policy or custom and the alleged deprivation.  (City of Canton v. Harris, supra, 489 U.S. at page

8  385.)

9        Brainerd has not and cannot establish any basis for liability against Lake County or its

10  Sheriff's Department.  Brainerd neither presents nor suggests the existence of any evidence that the

11  claimed violations were committed pursuant to formal policy or a "longstanding practice or custom

12  which constitutes the standard operating procedure" of the County or the Sheriff's Department.  (Jett

13  v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702 (1989).)  Brainerd does not

14  contend that individuals who committed alleged violations were officials with final decision-making

15  authority.  (Pembauer v. City of Cincinnati, 475 U.S. 469, 480-481, 106 S.Ct. 1292 (1986).)  Neither

16  does Brainerd allege or present evidence supporting a contention that an official with final decision-

17  making authority ratified a subordinate's action and its basis.  (City of St. Louis v. Praprotnik, supra,

18  at page 127.)

19

20       **G.    The Uncontested Facts Demonstrate Neither Deputy Wristen Nor Devincenzi**
               **Are Liable for the Allegations of Brainerd's Third and Fourth Causes of Action**

21        Subsequent to Brainerd's arrest, pursuant to Lake County policy and procedures, Wristen

22  prepared a Declaration for Probable Cause including details concerning the circumstances of the

23  arrest.  Neither Wristen nor Devincenzi otherwise participated in the probable cause determination or

24  the timing of that determination.  Brainerd has not and cannot present any facts reflecting a duty on

25  the part of either deputy to ensure a timely probable cause determination was made.  Brainerd has not

26  and cannot present any facts reflecting the either deputy interfered with or otherwise delayed the

27  probable cause determination.  No facts are alleged nor exist upon which Brainerd may maintain this

28  claim against these individual defendants.  As such, these defendants are entitled to summary

1   judgment against Brainerd on the third cause of action.

2        The uncontested facts demonstrate that neither Wristen nor Devincenzi observed any serious

3   medical condition for which Brainerd required medical treatment.  Wristen and Devincenzi were the

4   arresting officers.  There is no allegation - neither do any facts support such an allegation – that

5   either Wristen or Devincenzi observed Brainerd during his detention or otherwise had any duty to

6   ensure medical treatment was provided to Brainerd.

7        No facts are alleged nor exist upon which Brainerd may maintain this claim against these

8   individual defendants.  As such, these defendants are entitled to summary judgment against Brainerd

9   on the fourth cause of action.

10  **IV.    CONCLUSION**

11       The undisputed facts conclusively establish that  Judgment is properly entered in favor of

12  defendants together with an award of costs of suit.

13  Date:   June 11, 2008.

14                                    JONES & DYER

15
                                      By: ____/s/ Mark A. Jones_____
16                                           MARK A. JONES
                                             KRISTEN K. PRESTON
17                                           Attorneys for County of Lake, Lake County
                                             Sheriff's Office, Matthew Wristen and Emil
18                                           Devincenzi

19

20

21

22

23

24

25

26

27

28