```
JONES & DYER
A Professional Corporation
1800 J Street
Sacramento, California 95814
Telephone: (916) 552-5959
Fax: (916) 442-5959

MARK A. JONES, State Bar #96494
KRISTEN K. PRESTON, State Bar #125455
```

Attorneys for: Defendants County of Lake, Lake County Sheriff's Department, Matthew Wristen and Emil Devincenzi

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRAINERD,<br><br>               Plaintiff,<br><br>vs.<br><br>COUNTY OF LAKE; LAKE COUNTY SHERIFF'S DEPARTMENT<br><br>               Defendants. | NO.  C 07 2663 EDL<br><br>**DECLARATION OF MATTHEW WRISTEN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  July 22, 2008<br>Time:  9:00 a.m.<br>Courtroom E, 15th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA |

I, Matthew Wristen, declare:

1.    I am an adult over the age of 18 and I am a resident of the County of Lassen, State of California.  I have personal knowledge of the matters stated herein and, if called upon, can and will competently testify as to these matters.

2.    As of May 19, 2005, I was employed by the County of Lake as a deputy sheriff's officer.  In my position, I was regularly dispatched to respond to calls for assistance made to the Lake County Sheriff's Department.

3.    At or about 5:40 p.m. on May 19, 2005, I was dispatched with Lake County Sheriff Deputy Emil Devincenzi on a call reporting a verbal altercation between roommates at a residence located at 5269 Blue Lakes Road in Upper Lake, California.

4.    Upon the arrival of myself and Deputy Devincenzi at the residence, we were told

1  there were three residents of the home, each with an ownership interest.  The complaining residents
2  reported an argument pertaining to finances between the three roommates and that roommates Marci
3  Ward and Bobby Boyd were attempting to purchase from Michael Brainerd his share in the
4  residence.  Ward and Mr. Boyd reported to Deputy Devincenzi and myself that, in the course of the
5  argument, Michael Brainerd became angry and got in Boyd's face.  Brainerd raised his fist as if he
6  was going to strike Bobby Boyd.  Brainerd then walked away and stated that he intended to get a
7  baseball bat and hit Boyd in the head with it.
8       5.    Deputy Devincenzi and I were given permission by Boyd and Ward to enter the
9  residence where we encountered Michael Brainerd.  Upon questioning Brainerd admitted that he
10 made the threat against Bobby Boyd but that he did not mean it.  Brainerd stated that he felt he was
11 being "fucked with" by Boyd and Ward.   Brainerd admitted that he had a baseball bat in his room.  I
12 actually observed the baseball bat in Brainerd's room.  I explained to Brainerd that a threat to hit
13 someone in the head with a baseball bat is a crime.  Brainerd responded to me that he was not going
14 to be "fucked with" and that he would do what he had to do.
15      6.    Upon our arrival at the residence and throughout the time we were at the residence,
16 Boyd and Ward demonstrated in their statements to me and in their conduct, that they were
17 genuinely fearful of Brainerd.  Boyd was crying and stated that he was sincerely frightened as a result
18 of Brainerd's threat to strike him with a baseball bat.
19      7.    Based on the circumstances presented to me, I believed that Brainerd was in violation
20 of California Penal Code section 422 - Terrorist Threats.  I placed Brainerd under arrest and advised
21 him of the crime for which he was being arrested.
22      8.    At the time Brainerd was placed under arrest, I noted the odor of alcohol coming from
23 him. I asked Brainerd if he had been drinking and he admitted to me that he consumed a couple of
24 beers after work.
25      9.    I transported Brainerd to the Hill Road Correctional Facility where he was booked on
26 the charge of violating California Penal Code section 422.  Brainerd reported to me at the
27 correctional facility that he was sorry he had made the threat and that he would never hurt anybody.
28      10.    Pursuant to Sheriff's Department procedures, I prepared a narrative report regarding

1  the dispatch and the arrest.  A true and correct copy of the report I prepared is attached hereto and
2  incorporated herein as Exhibit A. (Bates stamped DEF 17-19.)

3      11.    Pursuant to Department procedures, on May 19, 2005 I prepared a Declaration for
4  Probable Cause and Bail Setting, setting forth under penalty of perjury information pertinent to the
5  dispatch and the arrest of Brainerd.  I understand that this Declaration was submitted to a magistrate
6  for determination.  Attached hereto and incorporated herein by reference as Exhibit B is a true and
7  correct copy of the Declaration I prepared.  (DEF 29.)

8      12.    I have close family members who suffer from severe diabetes.  I am familiar with the
9  physical signs and symptoms of diabetic distress.

10     13.    At no time while I was in the presence of Michael Brainerd did I observe him exhibit
11  any signs or symptoms of diabetic distress.

12  I declare under penalty of perjury that the foregoing is true and correct and that this
13  declaration was executed under the laws of the United States on this   28th day of May 2008,
14  at Janesville, California.

                                        /s/ Matthew Wristen
                                        MATTHEW WRISTEN