The author(s) shown below used Federal funds provided by the U.S. Department of Justice and prepared the following final report:

| | |
|---|---|
| **Document Title:** | **Lake County, California, Arrest Policies Project: A Process Evaluation** |
| **Author(s):** | **Brenda K. Uekert Ph.D.** |
| **Document No.:** | **201874** |
| **Date Received:** | **September 2003** |
| **Award Number:** | **98-WE-VX-0012** |

This report has not been published by the U.S. Department of Justice. To provide better customer service, NCJRS has made this Federally-funded grant final report available electronically in addition to traditional paper copies.

Opinions or points of view expressed are those of the author(s) and do not necessarily reflect the official position or policies of the U.S. Department of Justice.



**Institute for Law and Justice**
**1018 Duke Street**
**Alexandria, Virginia**
**Phone:  703-684-5300**
**Fax:  703-739-5533**
**E-Mail:  ilj@ilj.org**

# Lake County, California, Arrest Policies Project

## A Process Evaluation

**April 5, 2000**

**Prepared by**
**Brenda K. Uekert, Ph.D.**

**Prepared for**
**Lake County, California**
**National Institute of Justice**
**Violence Against Women Office**

# Introduction

The Grants to Encourage Arrest Policies Program encourages jurisdictions to implement mandatory or pro-arrest policies as an effective domestic violence intervention that is part of a coordinated community response. Congress appropriated funds for the Arrest Program under the Violence Against Women Act (1994). The Program assumes that the arrest of a batterer will leverage the coercive and persuasive power of the criminal justice system to ensure victim safety and manage the behavior of abusive, violent offenders. Ensuring victim safety and offender accountability are the guiding principles underlying the Grants to Encourage Arrest Policies. The Violence Against Women Act directs that the Arrest Program funds be used to

- Implement mandatory arrest or pro-arrest programs and policies in police departments, including mandatory arrest programs or pro-arrest program and policies for protection order violations;

- Develop policies and training programs in police departments and other criminal justice and tribal agencies to improve tracking of cases involving domestic violence;

- Centralize and coordinate police enforcement, prosecution, probation, parole or judicial responsibility for domestic violence cases in groups or units of police officers, prosecutors, probation and parole officers or judges;

- Coordinate computer tracking systems to ensure communication between police, prosecutors, and both criminal and family courts;

- Strengthen legal advocacy service programs for victims of domestic violence by providing complete information and support for a victim of domestic violence as the case against her abuser moves through the criminal justice system; and

- Educate judges, and others responsible for judicial handling of domestic violence cases, in criminal, tribal, and other courts about domestic violence to improve judicial handling of such cases.

The Institute for Law and Justice, Inc. (ILJ) is conducting a national assessment of the Grants to Encourage Arrest Policies Program, which is funded by the National Institute of Justice. ILJ is using a three-stage methodology for this evaluation. First is an annual national assessment of all sites that will document the type and scope of projects funded. Second, a process evaluation of twenty sites will examine the process and problems associated with implementation of the project. And third, an impact evaluation of six sites will assess the impact

of the project on the agencies involved, victim well-being, offender accountability, and community coordination.

This report is a process evaluation of the Arrest Project in Lake County, California. Lake County was awarded an Arrest grant of $388,763 in April 1997. In February 1999, the project an additional $650,768 was funded to continue the project through December 31, 2000. Lake County has received over $1 million in funding. Information for this report derives from staff interviews, courtroom observation, program documentation, and a review of local statistics.[1]

## Project Environment

Lake County is a rural county located 100 miles north of San Francisco and 40 miles east of the Pacific Ocean (see Exhibit 1). This section provides an overview of Lake County, including demographics, the criminal justice system, non-profit community, and California laws.

**Exhibit 1: Map of Lake County, California**



---

[1]    A site visit was conducted June 14-18, 1999.

## Lake County Demographics

Lake County features California's largest all natural lake (Clear Lake). The southern shoreline includes the county's largest city (Clearlake, 1998 est. pop. 11,916). The northern end of the lake includes the county seat of Lakeport (1998 est. pop. 4,701). There are 16 smaller townships[2] scattered throughout the county, which had an estimated population of 55,147 in 1998. Residents are overwhelmingly Caucasian (88%), with two major minority populations— Native American (2.3%) and Latino (7%).

Socioeconomically, the county is known as the "Appalachia of the North Coast." Lake County is poor and poverty is chronic. Unemployment is 11 percent, double the national average. In 1995, Lake County ranked 54th out of California's 58 counties in median family income. Approximately 35 percent of all households earn less than $15,000 annually.

Lake County is plagued by high rates of alcohol and substance abuse. It has the highest alcohol-related death rate in California. Methamphetamine is the drug of choice; for the last three years, more methamphetamine laboratories have been seized here than in the three nearby counties combined. Law enforcement estimates that at least 80 percent of crimes in Lake County involve drugs or alcohol. The crime rate is rising. In 1994, violent crime rose 23 percent (while dropping 5 percent in California). Between 1994 and 1995, violent crime increased again, by 13 percent.

In 1994, Lake County had one of the highest domestic violence rates per capita in California, at 1,000 domestic violence related calls for assistance per 100,000 population. Of the domestic violence calls reported to the Department of Justice, 54 percent involved weapons. Within the county, the city of Clearlake is noted for its particularly high rates of crime and domestic violence.

## Criminal Justice System

The criminal justice system in Lake County is comprised of law enforcement agencies, the District Attorney's Office, the courts, and probation.

---

[2]   Blue Lakes, Clearlake Oaks, Clearlake Park, Cobb, Finley, Glenhaven, Hidden Valley Lake, Kelseyville, Loch Lomond, Lower Lake, Lucerne, Middletown, Nice, Spring Valley, Upper Lake, and Witter Springs.

## Law Enforcement

There are three law enforcement agencies in the county: Lake County Sheriff's Department, Lakeport Police Department, and the Clearlake Police Department. The Sheriff's Department is responsible for law enforcement in the unincorporated areas of the county. The Sheriff's Department is chronically understaffed—in 1995, the Sheriff's Patrol Division had a 20 percent vacancy rate and patrolled 1,284 square miles of rural terrain with two deputies per shift. The Sheriff's Department also oversees the jail. In 1999, the Sheriff's Department had 46 patrol deputies who responded to 144 domestic violence calls for service.

The Clearlake Police Department is the second largest law enforcement agency in the county, with a staff of 11 patrol officers and 3 detectives. This department responded to 132 domestic violence calls for service in 1999. The Lakeport Police Department, with total staffing of 12 officers, is the smallest of the agencies. The Lakeport Police reported responding to just 19 domestic violence calls for service in 1999.

## District Attorney's Office

The District Attorney's Office is comprised of the District Attorney and 11 Deputy District Attorneys. The Office also employs 6 investigators. There are three divisions: (1) Criminal Division; (2) Victim/Witness Division; and (3) Family Support Division.

Within the District Attorney's Office, the Victim/Witness Assistance Program serves approximately 400 new domestic violence victims annually. Victim/Witness provides a package of victim advocacy services, including transportation, shelter, other emergency services, access to the California Victims of Crime restitution funds, access to free counseling and medical care, and a special domestic violence victim advocate to guide and support the victim through every court appearance. Victim/Witness staff include the Administrator, who oversees this project, six Victim Assistants, and two clerical positions.

## Courts

On January 1, 1999, California consolidated its court system, effectively eliminating the municipal courts. In Lake County, the courts consist of four judges of the Superior Court, which handles all criminal cases, and a court commissioner who handles family support matters. Three of the courts are located in Lakeport with the remaining court in Clearlake. For the fiscal year

1998 through 1999, a total of 15,209 cases were filed. The Courts filed 174 domestic violence civil restraining orders during this same period.

## Probation

The Probation Department's caseloads are double the state average. As of January 2000, the Department had a juvenile caseload of 391 and an adult caseload of 424. The Department is headed by a Chief Probation Officer, who oversees several divisions, including the First Offenders' Program, Juvenile Probation, Adult Probation, and Group Counseling. The juvenile and adult probation divisions are staffed by ten Deputy Probation Officers and four Senior Deputy Probation Officers. This grant helps fund a full-time Senior Deputy Probation Officer who specializes in monitoring domestic violence probationers.

## Non-Profit Community

In the original phase of funding, the non-profit partner was AWARE (Abused Women: A Recovery Environment), which served and sheltered battered women. Midway through the project, AWARE was disbanded and the county lost its only shelter. Currently, two non-profit community groups are involved with the project: Sutter Lakeside Community Services (SLCS) and Inter-Tribal Council of California (ITCC).

Sutter Lakeside provides a 24-hour crisis hotline for family violence, rape, or domestic violence and offers counseling, support groups, emergency shelter and advocacy. Its services are confidential. Sutter Lakeside is staffed by 47 employees, 6 of whom handle domestic violence matters.[3] The Inter-Tribal Council of California is a family violence program promoting the elimination of family violence in tribal communities. The organization has a Family Violence Prevention and Services Program that consists of one Victim Advocate and one Family Liaison Specialist.

In addition to the non-profit community, Lake County has a local task force active in the area of domestic violence. The Domestic Violence Prevention Council (DVPC), active since 1994, is an advisory group that works to improve the system of domestic violence intervention, treatment, and prevention through coordination, education, and maximum utilization of resources. Members include the Presiding Judge of the Superior Court, the Lake County Sheriff,

a judge, the District Attorney, a Supervisor, the director of Alcohol and Other Drug Services, and heads of other non-profit agencies.

## California Domestic Violence Laws

California Revised Statutes define "domestic violence" as "abuse committed against an adult or a fully emancipated minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship" (C.R.S §13700 (b)). "Abuse" is further defined as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another" (C.R.S §13700 (a)).

According to C.R.S §13701 (a and b)), all law enforcement agencies must adopt written policies that "encourage the arrest of domestic violence offenders if there is probable cause that an offense has been committed." Policies must also require the arrest of an offender if there is probable cause that a protective order has been violated. Furthermore, legislation mandates that these policies "shall discourage, when appropriate, but not prohibit dual arrests" (C.R.S §13701 (b)). Peace officers must identify the primary aggressor in any incident. A primary aggressor is defined as "the person determined to be the most significant, rather than the first, aggressor" (C.R.S §13701(b)). Factors that an officer should consider in identifying the primary aggressor include "the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense" (C.R.S §13701 (b)).

State statute (C.R.S §13701 (c)) specifically requires that local policies include specific standards for the following:

- Felony arrests;
- Misdemeanor arrests;
- Use of citizen arrests;
- Verification and enforcement of temporary restraining orders when (a) the suspect is present and (b) the suspect has fled;
- Verification and enforcement of stay-away orders;
- Cite and release policies;

---

[1] Sutter Lakeside operates the county's new shelter, put in place after this site visit.

- Emergency assistance to victims, such as medical care, transportation to a shelter or a hospital for treatment when necessary, and policy standbys for removing personal property and assistance in safe passage out of the victim's residence;
- Furnishing written notices to victims at the scene (i.e., restraining order, victims' compensation, and shelter information); and
- Writing of reports.

# Planning and Implementation

The goal of this project is "to complete a coordinated, integrated, documented system with public and private involvement to implement the mandatory arrest policies already in place in Lake County." In order to accomplish this task, seven individuals were hired and eight specific objectives were outlined. This section discusses the proposed plan, implementation strategy, and project performance.

# Proposal

This proposal was developed by the Administrator of the District Attorney's Victim/Witness Division, in conjunction with local non-profit organizations, law enforcement, prosecution, and probation. The original proposal was submitted in September 1996. The proposal for continuation of funds and project expansion was submitted in April 1998. The District Attorney's Office has overall responsibility for the Arrest Project.

The original and continuation proposals identify the following objectives:

1. Complete Lake County's Domestic Violence Response Team;
2. Enhance the Core System to link the law enforcement agencies, prosecutors, the courts, and victim service providers;
3. Develop policies and procedures, supported by training and protocols, that improve tracking of domestic violence cases;
4. Strengthen advocacy programs for victims of domestic violence, adding legal advocacy to existing services;
5. Use technology to increase victims' access to case information and to improve victim safety;
6. Create written protocols that document the policies and procedures of the proposed integrated domestic violence response system;
7. Ensure the sustainability of project operations after the funding period; and
8. Develop a community-based approach addressing violence against Native American and Latina women, traditionally underserved in Lake County.

These objectives are grouped into the following categories: (1) Domestic Violence Response Team; (2) technology; (3) policies and procedures; and (4) advocacy.

## Domestic Violence Response Team (DVRT)

The concept of the Domestic Violence Response Team (DVRT) developed from a California program referred to as the Spousal Abuser Prosecution Program (SAPP). The SAPP is funded by a $37,000 annual grant from the State Attorney's Office and was the first program in Lake County designed specifically to handle domestic violence cases. The Arrest Project expands the SAPP concept by creating a cross-agency team that includes prosecution, advocacy, law enforcement, and probation. Grant funds were used to hire personnel for the following full-time positions:

- Deputy District Attorney
- Two (2) Victim Advocates
- District Attorney Investigator
- Deputy Probation Officer
- Sheriff's Investigator
- Office Assistant.

The Deputy District Attorney provides vertical prosecution of domestic violence cases. Two victim advocates provide services to victims of domestic violence, with one advocate specializing in advocacy and outreach to the Native American and Latina communities. The District Attorney's Domestic Violence Investigator provides investigation and case preparation for cases within the county and supplements the resources of the Sheriff and two police departments. The Deputy Probation Officer is dedicated to domestic violence offenders and supervises both misdemeanor and felony level probationers. The Lake County Sheriff's Investigator is responsible for investigating domestic violence incidents that occur in the unincorporated areas within the county. Finally, an Office Assistant provides clerical support to the Deputy District Attorney and the District Attorney Investigator.

## Technology

Several objectives aim to enhance technology in Lake County. In particular, the proposal specified the use of Arrest funds to (1) complete the Sheriff Department's computer system; (2) provide law enforcement with laptop computers; (3) purchase and install the Victim Information and Notification Everyday (VINE) system; and (4) connect the Probation Department to the countywide computer network. The completion of these technological enhancements should lead to an integrated system that allows law enforcement, prosecution, advocates, and probation

on-site and field access to case information such as prior arrests, pending charges, and protection orders.

The Lake County Sheriff's Department is acquiring an advanced, integrated imaging and text management system, the Core System.[4] This computer system will include information on all domestic violence related protective orders. The Core System will be networked with the Lakeport and Clearlake Police Departments. The investigators hired under this project and the Sheriff's on-duty patrol deputies will be provided with laptop computers equipped with Internet and fax capability. Data from the Core System will be updated regularly to provide responding officers with same day contact information.

The Arrest Project includes the purchase of the VINE system, which provides callers with custody status and physical location of inmates. Information in VINE is updated every ten minutes. Victims can register with the system to be notified when there is a change in custody of a particular defendant. When an inmate is released or transferred, VINE will automatically telephone registrants every thirty minutes until someone answers and enters a personal identification number. VINE will operate in English and Spanish.

The final technological enhancement is to provide the Probation Department with high-speed access to the County network. Arrest funds are devoted to the acquisition of ISDN lines that will connect the Probation Department with the Core System and the County network. The County criminal justice network will incorporate the Core System and include protective orders, probation orders, court calendars, and other documents.

The creation of a countywide network introduces the issues of access, confidentiality, and training. The proposal addressed these issues by taking the following steps:

- Staff chosen by the participants will be trained in the use of CORE System for case tracking and will, in turn, train their colleagues;
- In-service trainings will be provided to all participants, to educate them on the existence and capacity of the CORE System; and
- Written protocols regarding confidentiality, information access and sharing, and integration of records by victim identity will be developed and adopted.

---

[4]  The Sheriff's Department is administering a grant from the Office of Community Oriented Policing Services, which is funding a portion of the technology to be integrated with this Project. A Community Policing to Combat Domestic Violence project, in the amount of $132,384, is being used to purchase and install the Core System.

## Policies and Procedures

The development of policies and procedures is an objective of the Arrest Project. Policies and procedures would be supported by training—all aimed to improve tracking of domestic violence cases. Specific policies and procedures, in addition to the protocols outlining access to the data system noted above, include:

- A protocol for use of and access to the Core System;
- A protocol for interaction among the VINE system, each participating agency, public or private, and the Core System;
- A master system protocol for each participating agency, documenting their respective policies and procedures; and
- A protocol documenting case tracking through the system from incident response through sentencing and supervision.

The goal is to create a "rule book" that will lead to a coordinated, integrated, multi-agency response to domestic violence. The protocols will confirm the mandatory arrest policies. The Domestic Violence Prevention Council will provide "peer review" for protocol development.

## Advocacy

The Arrest Project proposes to increase victim advocacy. The original advocacy goals changed in the continuation proposal. The original proposal stressed legal advocacy. In particular, funds were allocated to Redwood Legal Services, a non-profit organization serving the low-income community, to provide clients with legal representation in the preparation and hearing of temporary and permanent restraining orders. This element was not included in the continuation proposal. Instead, advocacy was strengthened in terms of both services and outreach.

Two Victim/Witness staff are designated to provide services to victims of domestic violence. One of the advocates will be primarily responsible for providing victim services and outreach to the Native American and Latina communities. In addition to the addition of advocacy within the District Attorney's Office, this project proposes to coordinate services and training with Sutter Lakeside Community Services and the Inter-Tribal Council of California. The project also supports a 24-hour crisis line.

# Project Implementation

The implementation of this project is discussed in terms of three stages: (1) start-up, (2) operationalization, and (3) expansion. The start-up phase involved hiring. Technology acquisition and the development of the team characterize operationalization, while project expansion is marked by the introduction of new non-profit partners and an emphasis on outreach to minority communities.

## Start-Up (1997)

Lake County received the Arrest grant in April 1997. The start-up phase was completed by the end of the year. During this stage, the District Attorney's Office assigned a full-time prosecutor to handle all cases of domestic violence that were submitted for review for possible prosecution. A full-time District Attorney Investigator was hired to follow up investigations and a victim advocate was assigned to each domestic violence case filed for prosecution.[5] A probation officer was hired in the summer. The Lake County Sheriff's Department Investigator began work on the project in October.

Start-up involved a discussion of technology, but the actual implementation of technology goals was delayed for two reasons. First, the Department of Justice placed special conditions on the Lake County Arrest Project. In particular, all information systems were to comply with Criminal Intelligence Systems Operating Procedures, which specifies confidentiality, security, and access among other things.[6] Second, the major component, the Core System, could not be enhanced until the Sheriff's Department moved into new facilities. By the end of the year, the special conditions were satisfied.

## Operationalization (1998)

The operationalization stage is characterized by technology acquisition and staff coordination. By September 1998, most of the elements of the Arrest Project were implemented. On the technology front, the project was able to move forward with the acquisition of all computer equipment and work on the Sheriff's Department's image scanning system and

---

[5]  Initially, the District Attorney Investigator was funded half-time with Arrest Policy funds, the remaining funding derived from matching funds from the local community based domestic violence program.

[6]  Special Condition: The grantee agrees that any technology systems funded or supported by grant funds will comply with 28 CFR Part 23.

network. Yet the actual programming work required was postponed because the county's Data Processing Department proved unable to provide assistance. This void was filled by a programmer from the Lake County Health Department, who began development of an Access database. By the end of 1998, the networking requirements of the Sheriff's Department computer system were discussed but no actions were taken.

Throughout 1998, project staff remained constant. This allowed for some coordination between agencies to develop. For the most part, this coordination was informal. During this time, the Project Director applied for the continuation of funding that would increase half-time positions to full-time and add an advocate position to the team.

## Project Expansion (1999)

In 1999, several elements influenced project implementation. First, the project received a substantial increase in grant money to continue the project. Second, new non-profit partners were brought into the project. Third, the project began to focus on outreach to the Latina and Native American communities. Fourth, changes in the District Attorney's Office introduced new prosecutors to the project. Fifth, the District Attorney's Victim/Witness staff took on the added responsibility of filing restraining orders.

The influx of grant money provided stability in staffing and the opportunity to continue technology enhancements as well as expand outreach. Yet the project faced a crisis that would lead to new partnerships. AWARE, the non-profit partner, became clouded in controversy due to misappropriation of funds. The organization disbanded, not only resulting in the absence of a non-profit partner in the Arrest Project, but the loss of the only women's shelter in the county. The Project Director was able to secure a commitment from the only other non-profit human services provider in the county, Sutter Lakeside Community Services (SLCS). Sutter Lakeside was able to take over the 24-hour hotline and most of the counseling services, although the county still suffered from the loss of the women's shelter. In addition to SLCS, the Inter-Tribal Council of California (ITCC) was brought into the project to provide training and expertise in outreach to the Native American community. An advocate was hired to serve both the Native American and Latina communities.

In 1999, the District Attorney's Office experienced changes that impacted the project. In January, Lake County inaugurated a new District Attorney and the office experienced substantial turnover. The promotion of the prosecutor assigned to domestic violence cases led to some transition difficulties. For a period of time, the District Attorney's Office assigned more than one prosecutor to domestic violence cases, and there is some uncertainty as to whether vertical prosecution was practiced. By the end of the year, the transition was completed and one prosecutor was assigned to domestic violence cases with the SAPP prosecutor acting in a back-up position.

In 1999, the District Attorney's Victim/Witness advocacy staff took on the added task of assisting victims with restraining order. This responsibility was a result of the inadequate performance of Redwood Legal Services, the non-profit organization initially charged with assisting victims in the preparation and hearing of temporary and permanent restraining orders.

## Performance

The continuation proposal identified the following criteria against which the project would be measured:

1. The completion of activities according to the proposed time line;
2. Objective measures, such as number of cases investigated, cases vertically prosecuted, and field supervision contacts;
3. Outreach contacts with the Native American and Latina communities;
4. Completion of the technology systems;
5. Calls made to and from VINE; and
6. Team activity.

In terms of outcome, the measures proposed to judge project performance include the following:

- Increased conviction rates;
- Faster case completion from filing to sentencing;
- Increased probation violations (indicative of increased supervision);
- Increased coordination among the public and private partners (e.g., more cross-referrals);
- Increased victim utilization of the criminal justice system;
- Utilization of automated systems, including the Core System and the server;
- Increased contacts initiated by Native American and Latina women;
- Decreased recidivism; and
- Improved victim safety (e.g., fewer protection order violations).

This project does not have a formal evaluator. Consequently, documentation and collection of statistics to gauge project performance are limited. This section reviews project performance in four areas: (1) technology; (2) collaboration; (3) agency activity; and (4) policies and procedures.

## Technology

Technology goals have not been met in a timely fashion. At the time of this site visit, patrol cars were not equipped with laptop computers, the Core System had not been completed, and the status of VINE was uncertain. Most of these delays were beyond the control of project staff. For instance, the Sheriff's Department's relocation to a new facility forced the postponement of the networking of the Core System. A side issue that caused further delays in network expansion was the prioritization of county agencies to make all computer systems Y2K compliant. Essentially, information technology staff were assigned to Y2K tasks, requiring other projects to be delayed.

The development of a specialized domestic violence database was also delayed due to the lack of assistance from Lake County's Data Processing Department. However, the database—in its current state of development—shows great promise. The database is in Microsoft Access, is user-friendly, and provides excellent documentation for the following fields: (1) demeanor and injuries; (2) witnesses/children; (3) victim/suspect relationship; (4) prior violence history; (5) restraining order information; and (6) police incident synopsis. If this system can be maintained and data can be continuously entered into the system, it has great potential to serve the needs of law enforcement, advocacy, prosecution, courts, and probation.

## Collaboration

Collaboration between criminal justice agencies is informal. Initially, the proposal called for regular meetings with project staff. Yet the team seldom holds a formal meeting, primarily because staff interact informally on a regular basis. Stability within most of the positions, as well as the central location of agency offices in Lakeport, has led to a positive working relationship between law enforcement, advocacy, prosecution, and probation staff involved in the project.

Collaboration between the criminal justice agencies and the non-profit partners is more difficult to gauge. In fact, the recentness of the relationships makes any assessment premature. At the time of this site visit, the roles of Victim/Witness advocates and Sutter Lakeside advocacy staff were not delineated. Furthermore, the relationship with the Inter-Tribal Council of California was not yet established. The collaborative process is ongoing and early signs indicate positive staff interaction and coordination.

## Agency Activity

There are three primary agencies within the criminal justice system participating in this project: (1) Lake County Sheriff's Department; (2) Lake County District Attorney's Office; and (3) Lake County Probation Department. Performance data were to be collected covering each agency's performance. At minimum, data on the number of cases investigated, the number of cases prosecuted vertically, and the number of probation field supervision contacts were specified as performance measures. With the exception of limited prosecution data, these statistics have not been compiled.

The District Attorney's Office provided prosecution statistics covering the years 1996 through 1998. The 1996 data are incomplete—number of cases reviewed and filed are not available. Regardless, there are some indications that the number of domestic violence cases handled by the District Attorney's Office has increased dramatically. In 1996, the District Attorney's Office closed 157 domestic violence cases. This figure more than doubled to 370 closed cases in 1997 and 360 closed cases in 1998. Clearly, more cases are being reviewed and filed by the District Attorney's Office since the inception of the grant. This trend is demonstrated by the graph in Exhibit 2.

**Exhibit 2: Number of Cases Closed, by Law Enforcement Agency and Year**



While the total number of cases closed rose by 136 percent from 1996 to 1997, the conviction rate remained relatively steady. In 1996, 81 percent of the filed cases resulted in convictions. This rate climbed to 85 percent in 1997 and 86 percent in 1998. The steady percentage of convictions was offset by a change in sentencing. Exhibit 3 shows jail time over a three-year period. Under the Arrest grant, the percentage of convicted who received some jail time actually dropped from 89 percent in 1996 to 83 percent in 1997. Yet the amount of jail time has been increasing. In 1998, 15 percent of those convicted were jailed more than 90 days, and an additional 7 percent were sent to state prison. This compares to 9 percent of those convicted in 1996 being sent to jail for more than 90 days, with no convictions resulting in prison time.

**Exhibit 3: Jail Time Received for Convictions, by Year**



Staffing has impacted project performance. However, the lack of documentation and statistical summaries from each agency makes the impact difficult to gauge. Turnover is especially problematic for the Lake County Sheriff's Office. More staff is needed in the areas of advocacy and probation. Victim/Witness has a backlog of cases where victim contact has not been made or there is need of follow-up services. Similarly, the probation officer's caseload is heavy, partly because there is no diversion program. The probation officer's caseload is dictated by judicial sentencing. A common sentence for domestic violence offenders is three years summary probation plus participation in the court-mandated intervention program. But one judge seldom assigns formal probation, which eases probation caseloads but detracts from the consistent message sent to batterers.

**Policies and Procedures**

The proposal included an ambitious plan to develop policies and procedures that would systematize the Lake County Domestic Violence Response Team. The products identified as an outcome of this project include three specific protocols:

1. A protocol documenting use of, and access to, the Project's information systems, including the Core System, the Project's CD-ROM server, and the VINE system, detailing procedures for ensuring information security, while providing equitable access for victim advocacy and community-based agencies outside the governmental criminal justice system. This protocol will document an

information sharing model that can be replicated in any jurisdiction, balancing preservation of the integrity of investigations, protection of offender criminal information and privacy, and victim safety and advocacy.
2.  A protocol documenting case tracking through the Domestic Violence Response Team, from incident response through sentencing and supervision.
3.  A master system protocol for each participating agency, documenting their respective policies and procedures, both internally and with respect to the project.

The lag in technological enhancements, noted previously, has certainly impacted the development of the technology protocol. At the time of this site visit, these protocols were not in existence. Similarly, the case tracking protocols were not outlined and there were no standard policies and procedures documenting how each agency would make a coordinated response to domestic violence. Finally, the master system protocol had not been completed, although progress was being made by the Lake County Sheriff's Department.

# Recommendations and Conclusions

The Lake County Arrest Project is an ambitious attempt to coordinate the county's response to domestic violence. The creation of a unified response occurs in the context of a rural county that is limited by financial resources and social services. Although some of the original program goals have not been met or have been delayed, this project shows a great deal of potential.

## Recommendations

The following recommendations, if implemented, would improve project performance.

1.  Develop comprehensive protocols and train criminal justice staff
2.  Complete technology networking and enhancements
3.  Conduct periodic assessments
4.  Formalize the partnerships
5.  Strengthen outreach efforts.

### Protocol Development and Training

Stability of staff and the long-term relationships among project participants have limited the need for comprehensive protocols. Nevertheless, a protocol should be developed to ensure uniformity in response. The protocols should contain sections on law enforcement (including dispatch, first responders, investigation), advocacy (non-profit, Victim/Witness), prosecution, judiciary, and probation. Gaps in the system can be addressed in the protocols; these include:

- Primary aggressor analysis (dual arrest issues);
- Emergency protective orders;
- Warrant follow-up;
- On-scene response (including Victim/Witness staff);
- Prosecution no-drop policies;
- Vertical prosecution;
- Role of advocates (non-profit versus Victim/Witness);
- Timeliness and extensiveness of response;
- Detention and jail release;
- Probation field supervision;
- Revocation criteria;
- Local referrals; and
- Treatment of violent, habitual batterers.

By adopting a comprehensive protocol, the Domestic Violence Response Team can coordinate their efforts to ensure that victims receive the maximum support available. Much of the law enforcement response remains in the discretionary hands of individual officers. For instance, following up on outstanding warrants and calling Victim/Witness staff to the scene are not standardized within and between agencies. Furthermore, officers require continuous training in identifying the primary aggressor and filling out emergency protective orders. Roll-call training should follow the adoption of protocols.

The District Attorney's Office would benefit from protocols that specified their no-drop policy as well as vertical prosecution and treatment of dual arrests in domestic violence cases. The role of Victim/Witness staff, especially in relation to advocacy services provided by local non-profit groups, should be highlighted in terms of job description and confidentiality requirements. The timeliness and extensiveness of response is a particular concern to Victim/Witness staff. Currently, Victim/Witness staff offer services to only those victims whose cases have been filed by the prosecutor. Essentially, victims who have had their cases reviewed but dropped do not receive services. Victim/Witness staff attempt to make contact with a victim as soon as possible. Realistically, there is at least a two-day delay from the time of the incident to contact between victim and advocacy staff. Staff should meet to discuss issues of scope and timeliness, with protocol development being the goal.

Protocols should include detention and jail release policies in domestic violence cases. Two items that need particular attention in terms of probation include rules of field supervision and criteria used to revoke probation. In addition to these specific agency policies and

procedures, the protocol should incorporate local referral information. Finally, the protocols could include special procedures devoted to the handling of violent and habitual batterers.

## Technology Networking and Enhancements

Many of the technology goals have not been met. The Lake County Sheriff's Department has not been able to complete the Core System, causing delays that have impacted all agencies. Technology goals should be revisited and a realistic timeframe should be adopted. Specific goals should include:

- Complete the Core System;
- Refine the Access database;
- Complete the VINE system;
- Provide agency networking;
- Develop protocol (operations, access, confidentiality); and
- Train staff

## Project Assessment

Regular assessments of project performance should be conducted. Originally, project staff and team members were to be surveyed regarding their satisfaction with the project and its effect on the community. Various statistics were also to be documented to track law enforcement, prosecution, advocacy, services, and probation response. These activities have not yet been conducted.

There is substantial anecdotal information that this project is a success. For instance, project staff and judges have stated that the quality of the investigation has improved, leading to a greater percentage of cases being pled. Others have noted that probation field supervision has made a substantial impact on recidivism and improved victim safety. Yet these assertions have not been documented.

Project staff should form an evaluation committee comprised of participants from each agency. The committee should revisit the evaluation components outlined in the proposal and indicate other objectives and goals of the Arrest Project. Once agreement is reached on project content and impact, the committee should identify sources of data and begin to collect statistics and other documentation, such as victim and staff interviews. Realistically, this recommendation will be difficult to meet at the local level because of heavy staff caseloads.

## Partnerships

The partnerships between agency staff are informal. The development of a more formal relationship, through periodic staff meetings, should result in greater consistency in team response and improvements to the entire criminal justice system. Project staff should consider case tracking as part of these meetings. Cases that have been difficult or problematic should be reviewed with the goal of improving response in future incidents. Staff should also engage in protocol development on a formal basis.

Key staff from each agency and non-profit organization should attend these meetings and be encouraged to actively participate in setting the agenda. Staff may want to expand their project to include other partners. For instance, jail staff currently work with Victim/Witness staff to ensure victim notification when there is a change in a defendant's custodial status and may benefit from more formal relationships. Regular meetings would also clarify the role of the non-profit organizations (Sutter Lakeside, Inter-Tribal Council of California). Another advantage of regular meetings is that new practices can be discussed, such as the creation of a first responder team that includes law enforcement and advocates.

## Outreach

The continuation grant added the element of outreach to the Latina and Native American communities. The outreach/advocacy portion of the project had not been implemented at the time of this site visit. Nevertheless, staff should consider how outreach will be conducted, who will be involved, and how success might be measured. Each agency should develop a plan that addresses bilingual limitations, cultural sensitivity training, and outreach goals.

## Conclusions

The Lake County Arrest Project appears to have made a significant impact on the community. The Domestic Violence Response Team includes staff from all of the major criminal justice agencies and has the potential of creating a unified response. Technological enhancements will provide staff with updated information concerning protection orders, arrest warrants, incident history, and case disposition. Outreach to the Latina and Native American communities is the final element that could make Lake County into a national model of rural response to domestic violence.

The credibility of law enforcement, prosecution, and probation agencies has increased dramatically as a result of this project. Particularly, field supervision of domestic violence probationers has been cited as a crucial signal to domestic violence offenders that they will be held accountable for their crimes. Victim safety is likely to be enhanced as the partnerships encourage frequent staff interaction and response consistency. Project participants credit Arrest funding for turning a mediocre response into an assertive systematic response.

The potential of this project results in the selection of Lake County as one of six sites nationwide to participate in ILJ's impact evaluation. The limitations of the project, in terms of documentation and delays in technology, will make the evaluation challenging. Yet the dedication of staff, collaboration between partners, and outreach to the minority communities provide interesting cornerstones in the fight against domestic violence.

# Table of Contents

Introduction ........................................................................................................................... 1

Project Environment ............................................................................................................. 2

   Lake County Demographics ............................................................................................ 3

   Criminal Justice System ................................................................................................. 3

      Law Enforcement ...................................................................................................... 4

      District Attorney's Office .......................................................................................... 4

      Courts ........................................................................................................................ 4

      Probation ................................................................................................................... 5

   Non-Profit Community ..................................................................................................... 5

   California Domestic Violence Laws ............................................................................... 6

Planning and Implementation .............................................................................................. 7

   Proposal ............................................................................................................................ 7

      Domestic Violence Response Team (DVRT) ........................................................... 8

      Technology ................................................................................................................ 8

      Policies and Procedures ........................................................................................... 10

      Advocacy ................................................................................................................. 10

   Project Implementation .................................................................................................. 11

      Start-Up (1997) ....................................................................................................... 11

      Operationalization (1998) ....................................................................................... 11

      Project Expansion (1999) ........................................................................................ 12

   Performance .................................................................................................................... 13

      Technology .............................................................................................................. 14

      Collaboration ........................................................................................................... 14

      Agency Activity ...................................................................................................... 15

      Policies and Procedures ........................................................................................... 17

Recommendations and Conclusions .................................................................................. 18

   Recommendations .......................................................................................................... 18

      Protocol Development and Training ........................................................................ 18

      Technology Networking and Enhancements ........................................................... 20

      Project Assessment .................................................................................................. 20

      Partnerships ............................................................................................................. 21

      Outreach .................................................................................................................. 21

   Conclusions ..................................................................................................................... 21