**JONES & DYER**
**A Professional Corporation**
**1800 J Street**
**Sacramento, California 95811**
**Telephone: (916) 552-5959**
**Fax: (916) 442-5959**

**MARK A. JONES, State Bar #96494**
**KRISTEN K. PRESTON, State Bar #125455**

Attorneys for: Defendants County of Lake, Lake County Sheriff's Office, Matthew Wristen and Emil Devincenzi

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRAINERD<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LAKE; LAKE COUNTY SHERIFF'S OFFICE; and DOES 1 through 50, inclusive,<br><br>Defendants. | NO. C 07 2663 EDL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: July 22, 2008<br>Time: 9:00 a.m.<br>Courtroom E, 15th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA |

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . i

Table of Authorities . . . . . . . . . . ii
Cases . . . . . . . . . . ii

1. Plaintiff Has Failed To Submit Any Evidence Showing There Exists Any Genuine, Material Issue For Trial On Any Cause of Action Set Forth In His Complaint . . . . . . . . . . 1

A. Plaintiff Has Failed To Present Evidence Sufficient To Create A Triable Issue on Any Cause of Action . . . . . . . . . . 1

B. Plaintiff Has Failed To Demonstrate The Facts That He Claims Are In Contention Are Material . . . . . . . . . . 2

2. The Uncontested Facts Demonstrate There Was Not Unreasonable Search or Seizure and Probable Cause Existed For Brainerd's Arrest . . . . . . . . . . 3

A. The Uncontested Facts Demonstrate The Existence of Probable Cause . . . . . . . . . . 3

B. The Uncontested Facts Demonstrate The Officers Had Consent To Enter The House . . . . . . . . . . 4

C. Miranda Violations . . . . . . . . . . 6

3. Qualified Immunity Extends to Shield Wristen and Devincenzi . . . . . . . . . . 6

4. The Uncontested Facts Demonstrate A Timely Probable Cause Determination . . . . . . . . . . 7

5. The Uncontested Facts Demonstrate There Was No Deliberate Indifference . . . . . . . . . . 11

6. There Exists No Basis for Municipal Liability . . . . . . . . . . 12

7. Conclusion . . . . . . . . . . 13

# TABLE OF AUTHORITIES:

**Case:**

Anderson v. Liberty Lobby, Inc,
477 U.S 242 (1986) . . . . . 1, 2

Berry v. Baca ,
379 F.3d 764 (9th Cir 2004) . . . . . 8

Brass v. County of Los Angeles,
328 F.3d 1192 (9th Cir. 2003) . . . . . 9, 10

Celotex Corp. v. Catrett,
477 U.S. 317, 323, 106 S.Ct. 2548 (1986) . . . . . 1

Chavez v. Martinez,
123 S.Ct. 1944 (2003) . . . . . 6

Chew v. Gates,
27 F.3d 1432 (1994) . . . . . 12

City of St. Louis v. Praprotnik,
485 U.S. 112, 108 S.Ct. 915 (1988) . . . . . 10, 12

Clement v. Gomez,
298 F.3d 898 (9th Cir. 2002) . . . . . 12

Coney v. Smith,
738 F.2d 1199 (11th Cir. 1984) . . . . . 7

County of Riverside v. McLaughlin,
500 U.S. 44, 111 S.Ct. 1661 (1991) . . . . . 7, 8

Crowe v. County of San Diego,
359 F.Supp.2d 994 (S.D.Cal. 2005) . . . . . 8

Farmer v. Brennan,
511 U.S. 825, 114 S.Ct. 1970 (1994) . . . . . 11

Fayle v. Stapley,
607 F.2d 858 (9th Cir. 1979) . . . . . 9

Franklin v. Oregon,
662 F.2d 1337 (9th Cir. 1981) . . . . . 11

Frazier v. Cupp,
394 U.S. 731, 89 S.Ct. 1420 (1969) . . . . . 5

Gerstein v. Pugh,
420 U.S. 103, 95 S.Ct. 854 (1975) . . . . . 8

Graham v. Conner,
490 U.S. 386, 109 S.Ct. 1865 (1989) . . . . . 6

Hervey v. Estes,
65 F.3d 784 (9th Cir. 1995) . . . . . . . . . 9

Jackson v. City of Bremerton,
268 F.3d 646 (9th Cir. 2001) . . . . . . . . . 6

Jackson v. McIntosh,
90 F.3d 330 (9th Cir. 1996) . . . . . . . . . 11

Jett v. Dallas Independent School District,
491 U.S. 701, 109 S.Ct. 2702 (1989) . . . . . . . . . 10, 12

Johnson v. Duffy,
588 F.2d 740 (9th Cir. 1978) . . . . . . . . . 9

Johnson v. Washington Metro Transit Authority,
883 F.2d 125 (D.C. Cir. 1989) . . . . . . . . . 1

Kayser v. Caspar,
16 F.3d 280 (8th Cir. 1994) . . . . . . . . . 11

Kennedy v. Applause, Inc.,
90 F.3d 1477 (9th Cir. 1996) . . . . . . . . . 1

Lee v. County of Los Angeles,
240 F.3d 754 (9th Cir. 2001) . . . . . . . . . 7

Leer v. Murphy,
844 F.2d 628 (9th Cir. 1988) . . . . . . . . . 9, 11

Matsushita Electric v. Zenith Radio Corp.,
475 U.S. 574, 106 S.Ct. 1348 (1986) . . . . . . . . . 1

Monell v. Dept. of Social Services,
436 U.S. 658, 98 S.Ct. 2018 (1978) . . . . . . . . . 10, 12

Mosher v. Saalfeld,
589 F.2d 438 (9th Cir. 1978) . . . . . . . . . 9

Pembauer v. City of Cincinnati,
475 U.S. 469, 106 S.Ct. 1292 (1986) . . . . . . . . . 10, 12

Peng v. Mei Chin Penghu,
335 F.3d 970 (9th Cir. 2003) . . . . . . . . . 4, 7

People v. Adams,
175 Cal.App.3d 855, 221 Cal.Rptr. 298 (1985) . . . . . . . . . 4

Rizzo v. Goode,
423 U.S. 462, 96 S.Ct. 598 (1976) . . . . . . . . . 9

Rodriguez v. Airborne Express,
265 F.3d 890 (9th Cir. 2001) . . . . . . . . . 1

Romero v. Kitsap County,
931 F.2d 624 (9th Cir. 1991) . . . . . . . . . . 6

Ruiz v. Walker,
WL 512710 (N.D. Cal. 2008) . . . . . . . . . . 11

Sanchez v. Vild,
891 F.2d 240 (9th Cir. 1989) . . . . . . . . . . 11

Saucier v. Katz,
533 U.S. 194, 202, 121 S.Ct. 2151 (2001) . . . . . . . . . . 6

U.S. v. Brooks,
367 F.3d 1128 (9th Cir. 2004) . . . . . . . . . . 5

United States v. Chesher,
678 F.2d 1353 (9th Cir. 1962) . . . . . . . . . . 9

United States v. Shumway,
199 F.3d 1093 . . . . . . . . . . 1

United States v. Valencia,
24 F.3d 1109 (9th Cir. 1994) . . . . . . . . . . 9

Villiarimo v. Aloha Island Air, Inc.,
281 F.3d 1054 . . . . . . . . . . 1

Walker v. Shansky,
28 F.3d 666 (7th Cir. 1994) . . . . . . . . . . 11

Word v. Croce,
169 F.Supp.2d 219 (S.D.N.Y. 2001) . . . . . . . . . . 11

**1. Plaintiff Has Failed To Submit Any Evidence Showing There Exists Any Genuine, Material Issue For Trial On Any Cause of Action Set Forth In His Complaint**

If, as here, the moving party meets its initial responsibility to demonstrate it is entitled to judgment, the burden shifts to the plaintiff to establish that a genuine issue as to any material fact does exist. Matsushita Electric v. Zenith Radio Corp., 475 U.S. 574, 585-587, 106 S.Ct. 1348 (1986). Plaintiff, in this instance, has failed to meet his burden and defendants are entitled to judgment as a matter of law.

**A. Plaintiff Has Failed To Present Evidence Sufficient To Create A Triable Issue on Any Cause of Action**

In response to defendants' motion, Brainerd submits his own declaration, setting forth a litany of "facts" Brainerd claims are pertinent to this Court's determination as to whether there exists any genuine issue for trial on his claims. A review of Brainerd's submission reflects, however, that Brainerd fails entirely to satisfy his burden that any genuine issue exists. Celotex Corp. v. Catrett, 477 U.S. 3176, 323, 106 S.Ct. 2548 (1986).

"A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S 242, 248 (1986). However, this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996) and Johnson v. Washington Metro Transit Authority, 883 F.2d 125, 128 (D.C. Cir. 1989). See also United States v. Shumway, 199 F.3d 1093, 1103-1104 - "When a respondent to a motion for summary judgment submits ***proper*** affidavits by individuals with personal knowledge ***and other cognizable and significantly probative evidence***, such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in respondent's favor, the judge must treat that fact as genuinely at issue." The Shumway court noted that any declaration submitted is necessarily self-serving. See also Rodriguez v. Airborne Express, 265 F.3d 890 (9th Cir. 2001). The court, however, distinguished self-serving and conclusory declarations such as that submitted by Brainerd (i.e. replete with unsupported claims that the officers are liars, simply denying the officer's version, and conclusory statements that events did not occur as

the officers described without anything more) not cognizable for purposes of establishing genuine issues of material fact. Brainerd offers no admissible evidence in support of his opposition except for his own "uncorroborated and self-serving" affidavit. As such, Brainerd has failed entirely to meet his burden and show that any genuine issue exists.

### B. Plaintiff Has Failed To Demonstrate The Facts That He Claims Are In Contention Are Material

Brainerd must demonstrate that the facts he claims are in contention are material or that the facts he claims are contested will affect the outcome of the action under governing law. Anderson, supra, at page 248. This he has failed to do with regard to any of his claims.

On the "unlawful arrest" claim, Brainerd's affidavit contests the officers' rendering of the circumstances with which the officers were confronted when they were called to the subject residence. Specifically, Brainerd denies that he made or admitted making a threat, contests the amount of his consumption of alcohol[1] and the location of the baseball bat at the residence.[2] Under the governing law, however, none of these matters which Brainerd disputes are material to the Court's determination that probable cause existed for Brainerd's arrest. As is discussed in more detail herein, defendants have established on the basis of fact that Brainerd has not and cannot dispute, that the officers were aware of facts that would cause a reasonable person to suspect a crime had been committed.

On the confinement claim, Brainerd's affidavit contests that he was "unaware" of Officer Wristen's probable cause declaration and the magistrate's probable cause determination, that the probable cause declaration contained false statements and that he "did not understand" why he was not taken before a judge so he could "present the evidence to establish that there was no violation of criminal law." Brainerd Declaration ¶¶29-32. However, as demonstrated herein, none of these matters which Brainerd disputes are material to the Court's determination that a probable cause

---

[1] Brainerd swears he consumed one beer (Brainerd Declaration ¶5) in contrast to the officers' report that Brainerd told them he consumed a couple of beers.

[2] Brainerd testified at deposition that he told the officers he had a baseball bat in an equipment bag in the garage and that Boyd was aware that Brainerd had the bat. Brainerd Deposition pages 66-67 and 69:7-10.

determination for Brainerd's arrest was made within 48 hours and meets the promptness requirement under governing law.

On the deliberate indifference claim, Brainerd's affidavit simply confirms his opinion that he was administered medication and fed a diet for the purpose of controlling a diabetic condition. Brainerd Declaration ¶¶27-28. Brainerd testified in deposition that his diabetes is difficult, if not impossible, to control in any event. Under the governing law, these points of dispute raised by Brainerd are wholly immaterial to the court's determination that defendants adequately addressed Brainerd's medical condition.

On the Monell claim, Brainerd references an inadmissible report. Poore Declaration, Exhibit C. As discussed in more detail herein, even assuming admissibility of the report for the truth of the matter asserted - namely as a demonstration of the existence domestic violence arrest policy of the County, the existence of the policy in itself is not sufficient to demonstrate causation.

Brainerd's declaration and the inadmissible report concerning domestic violence arrests is not sufficient to carry his burden to demonstrate genuine issues of material fact requiring submission to a jury. Defendants are entitled to judgment as a matter of law on all claims.

### 2. The Uncontested Facts Demonstrate There Was Not Unreasonable Search or Seizure and Probable Cause Existed For Brainerd's Arrest

#### A. The Uncontested Facts Demonstrate The Existence of Probable Cause

Brainerd does not dispute that the officers were presented with the statements of Brainerd's housemates who claimed Brainerd was threatening to do physical harm, namely, to strike Boyd in the head with a baseball bat. Indeed, Brainerd's own testimony is that he had no idea what either Boyd or Ward told the officers. Brainerd Deposition 69:3-6; 76:23-77:3. Viewing the evidence in a light most favorable to Brainerd, while he disputes a bat was in the residence, it is undisputed that Brainerd had the means available to carry out his threat. Brainerd told the officers he had a bat in the garage of the residence and Brainerd knew Boyd was aware that he had the bat. See footnote 2, above. Brainerd confirmed that he repeated to the officers what he claims he told Boyd; namely, that someone should hit Boyd in the head and "knock some sense into him." Brainerd Deposition 69:11-24. There is no dispute that Brainerd's victim Boyd was fearful of his safety and was convinced that

Brainerd would execute his threat or that Ward expressed a similar belief to the officers, that Brainerd's threat was serious. Brainerd confirmed in his deposition testimony the same conduct on the part of Ward and Boyd that formed the basis upon which the officers' reasonably believed these victims took Brainerd's threats seriously. Brainerd Deposition 74:16-76:22 regarding Brainerd's Answer to Temporary Restraining Order. More specifically, Brainerd confirmed his statement to the Superior Court that "Mr. Boyd stood crying and Ms Ward ran across the street crying in fear" as Brainerd was escorted out of the residence by the officers. Id. at 75:12-22.

Brainerd, in his opposition, confuses a standard for proof on guilt of commission of the Penal Code section 422 with the reasonableness standard applicable to the officers' determination that Brainerd had or would carry out the threats reported by Ward and Boyd. The evidence demonstrates a reasonable belief on the part of the deputies that a reasonable person would take Brainerd's threats seriously.

Brainerd also fails to distinguish the instant case from the circumstances confronting the officers in Peng v. Mei Chin Penghu, 335 F.3d 970 (9th Cir. 2003). Brainerd's attempt to create a factual dispute does not defeat probable cause. Here, as in Peng, the victims' statements were sufficiently definite to establish that they understood Brainerd to threaten violence and both were fearful for their physical safety. These complaints conveyed to the officers were corroborated by the surrounding circumstances. Ward, Boyd and Brainerd's living situation was becoming increasing tense; the three were earlier involved in a verbal dispute; Brainerd believed that Ward and Boyd were attempting to remove him from the residence and inflict significant financial harm to him, and Brainerd was upset that his housemates were ganging up on him and that he would be homeless. Regardless of the dispute as to the location of the bat, there is no dispute that Brainerd had a bat at the residence that was accessible to him and that Boyd was aware Brainerd had the bat.

Responding to this domestic violence report, Wristen and Devincenzi had a duty to ensure the present and continued safety and well being of the occupants of the residence where the alleged violence was threatened; it was "important for officers to err on the side of safety for the victim in order to prevent further violence and allow the parties to cool down." (Peng, supra, at 978, fn.6.)

"Under California law, an officer has probable cause for a warrantless arrest 'if the facts

known to him would lead a [person] of ordinary care and prudence to believe and consciously entertain and honest and strong suspicion that the person is guilty of a crime '" Peng, at 976, quoting People v. Adams, 175 Cal.App.3d 855, 221 Cal.Rptr. 298, 301 (1985). The undisputed evidence demonstrates a reasonable belief on the part of the officers that a crime had been committed and probable cause existed for Brainerd's arrest. Defendants are entitled to a judgment as a matter of law on the "unlawful arrest" claim.

**B. The Uncontested Facts Demonstrate The Officers Had Consent To Enter The House**

The evidence Brainerd submits to support this is inconsistent and fails to demonstrate the existence of any dispute as to material facts and is inconsistent. First, Brainerd concedes that his housemates – co-owners of the residence – admitted the officers to the residence. Then, Brainerd claims he did not consent to a search – although Brainerd fails to aver that he opposed a search or the presence of the officers inside the residence. Brainerd Declaration ¶21. Finally, Brainerd concedes the officers made no search. Brainerd Declaration ¶25. Even assuming the officers' presence in the residence constitutes an actionable civil rights violation, the uncontested facts nevertheless demonstrate that defendants are entitled to judgment as a matter of law on this issue.

The officers had express permission to enter the residence by Boyd and Ward who had authority to grant them entry. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420 (1969) - joint user of duffle bag had authority to consent to its search when the bag contained possessions of other user. The Matlock and Georgia decisions cited by Brainerd actually support Ward and Boyd's authority. In Matlock, the Supreme Court noted that the determination of common authority "rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, at page 170, fn 7. The Georgia decision turned on the physical presence of a co-resident *refusing to permit entry*. In this instance, when Brainerd became aware of the presence of the officers, he did not object to their presence whatsoever or refuse them entry to "his" room.

Even assuming Brainerd's assent was necessary and withheld, the officers were nevertheless justified in their entry of the residence based on the circumstances with which they were presented; namely, the complaint of Ward and Boyd about Brainerd's threats and the genuine fear they expressed that harm to Boyd was imminent. In U.S. v. Brooks, 367 F.3d 1128 (9th Cir. 2004) the Ninth Circuit held that entry into a room was objectively reasonable where the officers believe harm might occur. In that instance, it was reasonable for the officers to believe that a woman was in danger and to enter her room where another guest in an adjoining room called 911 and expressed a concern about possible domestic violence. At the suggestion that less intrusive methods of intervention were available to the officers, the court responded, "The Supreme Court has 'repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment. (Citation omitted.) Brooks, at 1136. Similarly, the circumstacnes presented warranted the officers' entry.

**C. Miranda Violations**

Brainerd contends, beyond the scope of his amended complaint, that defendants failed to give him Miranda warnings and, on this basis, he claims violation of his Fourth and Fifth Amendment rights. Miranda warning violations as set forth here by Brainerd do not present an adequate basis upon which to base a section 1983 action. Chavez v. Martinez, 123 S.Ct. 1944 (2003).

**3. Qualified Immunity Extends to Shield Wristen and Devincenzi**

"[R]egardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). The uncontested facts demonstrate the absence of any violation of Brainerd's Fourth Amendment rights. Even assuming Brainerd could make out an alleged violation, Brained fails to address in his opposition the second inquiry essential to any qualified immunity analysis; namely, whether Wristen and Devincenzi "could nevertheless have reasonably but mistakenly believed [this] conduct did not violate a clearly established constitutional right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001).

It would not have been clear to reasonable officers in the position of Wristen and Devincenzi

that probable cause did not exist for the arrest. In this inquiry, the central issue is whether the deputies' actions were objectively reasonable in view of "the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Conner, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989). The factual disputes Brainerd attempts to raise pertaining to the circumstances at the time of his arrest – including whether he threatened to strike Boyd in the head with a bat, the availability of the bat to Brainerd, or any lack of intent to carry out a threat once made – are inappropriate for consideration on the issue of qualified immunity. The analysis is of the facts and circumstances ***as perceived from the deputies' point of view*** and an assessment of the reasonable objectivity of those circumstances. Saucier v. Katz, 533 U.S. 194, 202, 205, 121 S.Ct. 2151 (2001). The facts material to this analysis are undisputed. Brainerd admits that hostilities between him, Ward and Boyd were steadily increasing and that the had a verbal altercation before the officers arrived. Both deputies heard Ward and Boyd relate the substance of Brainerd's threat. Brainerd conceded he was not aware what Boyd and Ward told the deputies. Both deputies observed the demeanor of Ward and Boyd, demeanor that was described similarly by Brainerd - Boyd was crying and Ward was running away in fear. Brainerd admits he had access to a bat and claims he told the officers it was in the garage. Brainerd admits Boyd knew Brainerd had access to the bat. The hostile environment with the threat of domestic violence made by Brainerd was sufficient basis upon which the deputies determined probable cause existed for his arrest.

As the court concluded in Peng, supra, even if the officer had been mistaken about the existence of probable cause, his mistake was objectively reasonable, and he was entitled to qualified immunity. (Peng, supra, at page 980.) Viewing all the evidence in a light most favorable to Brainerd, only one conclusion is possible. Devincenzi and Wristen are shielded from liability by qualified immunity.

**4. The Uncontested Facts Demonstrate A Timely Probable Cause Determination**

The undisputed facts demonstrate a timely judicial determination was made that there existed

probable cause for Brainerd's arrest.[3] Relying on a series of cases predating the Supreme Court's decision in County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661 (1991), Brainerd argues without support in law or fact that the timing of the probable cause determination was unreasonable and attempts, inappropriately, to shift his own burden of proof on to the defendants. Brainerd ignores the statement of the Supreme Court in McLaughlin clearly applicable in this situation:

> The Court recognized in Gerstein that a person arrested without a warrant is entitled to a fair and reliable determination of probable cause and that this determination must be made promptly. Unfortunately, as lower court decisions applying Gerstein have demonstrated, it is not enough to say that probable cause determinations must be "prompt." This vague standard simply has not provided sufficient guidance. Instead it has led to a flurry of systemic challenges to city and county practices, putting federal judges in the role of making legislative judgments and overseeing local jailhouse operations. (Citations [including Bernard] omitted.) Our task in this case is to articulate more clearly the boundaries of what is permissible under the Fourth Amendment. Although we hesitate to announce that the Constitution compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds. Taking into account the competing interests articulated in Gerstein, we believe that a jurisdiction that provides judicial determinations of probable case within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein. This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate Gerstein ***if the arrested individual can prove that his or her probable cause determination was delayed unreasonably.*** Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must

---

[3] Brainerd does not dispute that the jail received notice of the probable cause determination within 48 hours of the arrest. Esberg Declaration, ¶11. Further, Brainerd does not challenge defendants' right to judicial notice of the magistrate's determination. While the magistrate's opinion and statements bear booking number (no complaint was filed), the record is nonetheless a court record of indisputable authority of which this court may take notice and, by which notice is properly authenticated. See Coney v. Smith, 738 F.2d 1199 (11th Cir. 1984) - federal court could take notice of state court's suppression hearing in determining whether search and seizure had been litigated, even though hearing had not been made a part of the record.

This court can take judicial notice of the magistrate's opinion and statements of fact recited in that decision, but not the truth of these statements. Lee v. County of Los Angeles, 240 F.3d 754, 775 (9th Cir. 2001) - a court may take judicial notice of undisputed matters of public record, but not disputed facts therein. In this instance, while Brainerd disputes the existence of probable cause for his arrest and disputes the factual content of Wristen's Probable Cause Declaration, Brainerd submits no evidence disputing the record reflecting that a probable cause determination was made or the receipt by jail personnel of that determination within 48 hours of his arrest. Defendants have submitted sufficient evidence that the probable cause determination took place within 48 hours.

> allow a substantial degree of flexibility. McLaughlin, at 1669-1670, emphasis added; citing Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854 (1975).

Brainerd submits no evidence that his probable cause determination was "delayed unreasonably."[4] The evidence submitted in support of the motion demonstrates the determination was accomplished within 48 hours. There exists no evidence that would support any inference of an unreasonable delay. Defendants are entitled to judgment as a matter of law on this issue.

Brainerd also argues that statements contained with the probable cause declaration that he alleges were false "tainted the entire process." First, Brainerd's argument that, stripped of these facts, "there is not a scintilla of information that any crime was committed" misses the mark. The probable cause determination is not limited to the content of Wristen's declaration.[5] Moreover, the issue on this claim is not whether there was probable cause. The undisputed facts demonstrate there was. The issue is, instead, whether the probable cause determination was made within 48 hours. The undisputed evidence demonstrates that it was. Second, even assuming Brainerd's assertions of false information in the declaration had any bearing whatsoever on the timeliness of the probable cause determination, Brainerd's claims of falsity are nevertheless without adequate evidentiary support. Brainerd's allegations of falsity "cannot merely be conclusory and must be accompanied by a detailed offer of proof." United States v. Chesher, 678 F.2d 1353, 1360 (9th Cir. 1962). A "substantial showing" that the officer "submitted an affidavit that contained statements he knew to

---

[4] Brainerd's assertions concerning "undisputed evidence" of courthouse hours, the victim witness office, transport of other detainees and representations by jail personnel are wholly insufficient to demonstrate "unreasonable delay." See Opposition at 14:26-15:6. First, these facts are asserted by Brainerd without foundation or personal knowledge and thus must be rejected as "evidence" of anything other than Brainerd's unsupport and inadmissible opinions. Second, even assuming Brainerd's averments constituted evidence of anything, Brainerd fails to demonstrate how, in his particular case, the process and time employed for determination of probable cause was unreasonably delayed. "[T]he Supreme Court has held that jurisdictions that establish probable cause within forty-eight hours of arrest will be immune from systemic challenges. (Citation.) A delay in determining probable cause that lasts less than forty-eight hours can raise constitutional concerns only if the arrested individual can prove unreasonable delay." Berry v. Baca , 379 F.3d 764, 771 (9th Cir 2004), citing McLaughlin at p. 56.

[5] Evaluation of the probable cause declaration alone is an insufficient basis for determination of the constitutionality of a warrant-less arrest. "[T]he court has been unable to find a single case in which the Ninth Circuit has confined its probable cause analysis to the four corners of a probable cause declaration when evaluating the constitutionality of a warrantless arrest. Rather, the Ninth Circuit has consistently evaluated the legality of warrantless arrests by considering all of the facts *known to the officers at the time of the arrest*. (Citations omitted.)" Crowe v. County of San Diego, 359 F.Supp.2d 994, 1006 (S.D.Cal. 2005).

be false or would have known were false had he not recklessly disregarded the truth" is required. Hervey v. Estes, 65 F.3d 784, 788 (9th Cir. 1995). And Brainerd must demonstrate that, "without the dishonesty included or omitted information, the magistrate would not have issue the warrant." Id., at 789. Brainerd's self-serving, unsupported declaration is insufficient to make the required showing. United States v. Valencia, 24 F.3d 1109 (9th Cir. 1994).

Brainerd raises for the first time a claim based on post-release delay. While Brainerd may have a right to release within a reasonable time, there is no evidence to suggest that the timing of his release was in any fashion unreasonable. Brass v. County of Los Angeles, 328 F.3d 1192 (9th Cir. 2003).

Finally, Brainerd fails to present evidentiary or legal support for imposing liability on any defendant for failure to obtain a timely probable cause determination. Section 1983 actions require a causal link between the actions of the defendant and the deprivations alleged to have been suffered by the plaintiff. Rizzo v. Goode, 423 U.S. 462, 96 S.Ct. 598 (1976). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which [plaintiffs complain]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). The causation inquiry must be individualized, focused on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have cause a constitutional deprivation. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Brainerd must specifically establish the causal link between each individual defendant and the claimed constitutional violation. Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

The only evidence concerning a connection of either officer to the determination is the declaration submitted by Wristen within a short time of Brainerd's arrest.[6] Brainerd neither contends

---

[6] Brainerd's "question . . .of simple proximate causation" (Opposition at 17:21-22) is unavailing. While the officers liability for unlawful arrest, if proven, may extend to "any natural and foreseeable consequences" related to that violation, here Brainerd alleges a separate constitutional violation that requires specific proof. Brainerd's approach would result in arresting officer's potential liability for each and every alleged violation occurring subsequent to detention until release. This untenable approach is directly contrary to applicable law that requires specific causal connection for each defendant to each alleged constitutional violation. Indeed, it is contrary to the holding of the court in Hodges v. Musco cited by Brainerd: "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexis' or 'affirmative link' between the [defendant's action] and the specific deprivations of constitutional rights at issue." Id. at 121.

nor submits evidence to support any contention that the declaration was untimely. Otherwise, there is no evidence connecting either Wristen or Devincenzi to the timing of the probable cause determination. Neither does Brainerd submit any evidence or legal support for pursuing this basis for liability against the Sheriff's Department or the County. See Brass, supra. "A municipality may not be sued under section 1983 solely because an injury was inflicted by its employees or agents . . . Instead it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." Monell v. Dept. of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978). Counties are not liable for deprivations caused by their employees. (Id.) Counties are subject to liability where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." (Id.) Liability of the municipality must rest on its own actions.

Brainerd neither presents nor suggests the existence of any evidence that the claimed violations were committed pursuant to formal policy or a "longstanding practice or custom which constitutes the standard operating procedure" of the County or the Sheriff's Department. Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702 (1989). Brainerd does not contend that individuals who committed alleged violations were officials with final decision-making authority. Pembauer v. City of Cincinnati, 475 U.S. 469, 480-481, 106 S.Ct. 1292 (1986). Neither does Brainerd allege or present evidence supporting a contention that an official with final decision-making authority ratified a subordinate's action and its basis. City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915 (1988). Brainerd identifies no policy, lack or policy, custom or practice.

On the basis of the uncontested facts, defendants have demonstrated that a timely probable cause determination was made regarding Brainerd's arrest. Brainerd has utterly failed to establish any basis upon which liability against any named defendant may be pursued. Defendants are entitled to judgment as a matter of law.

**5. The Uncontested Facts Demonstrate There Was No Deliberate Indifference**

Brainerd submits only his declaration in an attempt to create a triable issue of fact concerning this claim; however, a review of the evidence in a light most favorable to Brainerd clearly demonstrates defendants are entitled to judgment as a matter of law.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07 2663 EDL

H:\MAJ.cases\Brainerd v. Lake County\Pleadings\MSJ\MSJ - Reply.wpd

-11-

Self-serving conclusions by a plaintiff in support of a claim for deliberate indifference to a serious medical need are insufficient to withstand summary judgment. Walker v. Shansky, 28 F.3d 666, 672 (7th Cir. 1994); Kayser v. Caspar, 16 F.3d 280, 281 (8th Cir. 1994); Word v. Croce, 169 F.Supp.2d 219, 227 (S.D.N.Y. 2001). Brainerd submits no competent medical evidence that supports his claim that only a Lantis medication regime and some unspecified dietary provisions will control his diabetes. Indeed, such medical evidence would be contrary to Brainerd's own testimony that his diabetes is unpredictable and largely unmanageable. Defendants have adequately demonstrated on the basis of Brainerd's own testimony that, at the base of this claim is Brainerd's contention not that defendants failed to provide adequate medical care; in fact, Brainerd's testimony concedes that defendants provided him medical treatment. Rather, Brainerd bases his claim on his own opinion – wholly unsupported by any competent medical evidence – that defendants did not provide the precise type of care he would prefer. "Mere differences of opinion between a prisoner and the prison medical staff do not and cannot support a claim for "deliberate indifference." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) *cert denied* 519 U.S. 1029, 117 S.Ct. 584 (1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

The uncontested facts demonstrate jail personnel determined Brainerd's medical status when he was brought to the jail and immediately responded to his medical needs by referring him to CFMG for treatment. And, while this showing is adequate to entitle defendants to summary judgment, other bases exist for judgment in defendants' favor on this issue.

Brainerd has utterly failed to identify any evidence of any individual defendant – whether it be Wristen or Devincenzi or any presently unidentified individual – who knew of and disregarded "an excessive risk to [Brainerd's] health or safety." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994). "The 'deliberate indifference' standard requires proving some degree of 'individual culpability,'" Leer, supra, at page 633. See also Ruiz v. Walker, WL 512710 (N.D. Cal. 2008). Contrary to Brainerd's argument, liability of an individual for deliberate indifference to serious medical needs cannot be premised on an extension of Brainerd's claim for unlawful arrest. Rather, such a claim requires specific evidence that the named defendants "had a sufficiently culpable state

of mind in denying the proper medical care." Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). This Brainerd has not and cannot do. The individual defendants are entitled to judgment as a matter of law.

Likewise, Brainerd has utterly failed to demonstrate any basis for liability of the County or the Sheriff's Department on this claim. Brainerd identifies no policy or lack thereof upon which such liability is premised. It is Brainerd's burden to demonstrate a direct causal link between municipal policy or custom and the alleged deliberate indifference to his medical condition. Absent identification of any policy or other basis upon which liability is alleged, Brainerd cannot possibly meet this burden.

This cause of action fails as a matter of law and all defendants are entitled to summary judgment.

**6. There Exists No Basis for Municipal Liability**

Brainerd submits a report (Exhibit C to Poore Declaration) as evidence of municipal policy concerning domestic violence arrests. It is on the basis of this report that Brainerd argues there exists a dispute as to genuine issues of material facts such that his cause of action for municipal liability can survive summary judgment. To the contrary, this report supplies no basis at all.

The report itself is inadmissible and is not properly considered by the court in determination of the issues presented in this motion. See Evidentiary Objections submitted herewith.

Even assuming that Brainerd could somehow convert this submission to admissible evidence, the report still provides an insufficient basis upon which a triable issue of fact can be created precluding summary judgment. Absent from Brainerd's offering is any evidence that his arrest was made pursuant to any alleged policy. Only where a municipal policy is deemed the "moving force" behind the violation is a sufficient causal relationship established. Chew v. Gates, 27 F.3d 1432, 1444 (1994), citing Monell, supra, at page 690-691. Brainerd neither presents nor suggests the existence of any evidence that the claimed violations were committed pursuant to formal policy or a "longstanding practice or custom which constitutes the standard operating procedure" of the County or the Sheriff's Department. Jett v. Dallas Independent School District, supra, at 737. Brainerd submits no evidence that individuals who committed alleged violations were officials with final

decision-making authority. Pembauer v. City of Cincinnati, supra, at 480-481.   Brainerd presents evidence supporting a contention that an official with final decision-making authority ratified a subordinate's action and its basis. City of St. Louis v. Praprotnik, supra, at page 127.

All defendants are entitled to judgment on this cause of action as a matter of law.

**7.     Conclusion**

The undisputed facts conclusively establish that  Judgment is properly entered in favor of defendants together with an award of costs of suit.

Date:   July 8, 2008.

JONES & DYER

By:     /s/ Mark A. Jones
        MARK A. JONES
        KRISTEN K. PRESTON
        Attorneys for County of Lake, Lake County Sheriff's Office, Matthew Wristen and Emil Devincenzi